## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOHN DOE BY AND THROUGH
A.W., and A.W.

      Plaintiffs,

v.                                                            Case No: 8:23-cv-1772-CEH-AAS

HERNANDO COUNTY SCHOOL
DISTRICT, EXPLORER K-8,
SABREENA SARRAN, ANDREW
MACGREGOR and DOES 1-20,

      Defendants.

_____

## <u>ORDER</u>

This matter is before the Court on Defendants School Board of Hernando County and Explorer K-8's Motion to Dismiss Plaintiffs' Second Amended Complaint, Motion for a More Definite Statement, and Incorporated Memorandum of Law (Doc. 31), and Defendants Sabreena Sarran and Andrew MacGregor's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 37). Plaintiffs John Doe and A.W. have responded in opposition to both motions (Docs. 38, 40). Also before the Court is Plaintiffs' Motion to Proceed Anonymously (Doc. 41), to which Defendants have not responded in opposition.

Having considered the motions and being fully advised in the premises, the Court will grant the motion to proceed anonymously and the motions to dismiss. Plaintiffs are granted one final opportunity to file an amended complaint that is not a

shotgun pleading. *See* Section III(A).   In drafting a Third Amended Complaint, Plaintiffs are also directed to review the Court's findings as to Defendants' motions pursuant to Rule 12(b)(6). *See* Section III(B), *infra*.

## I.   BACKGROUND[1]

Plaintiff John Doe is an eight-year-old African American male, and Plaintiff A.W. is his mother and legal guardian. Doc. 25 ¶¶ 1, 4, 16-17.  They assert eleven causes of action against Defendants Hernando County School District ("HCSD"); Explorer K-8 ("Explorer"), Doe's school; Andrew MacGregor, the assistant principal of Explorer; and Sabreena Sarran, Doe's teacher. *See id.* ¶¶ 5, 18-21, 24, 31, 40.

Plaintiffs allege that Doe suffers from various medical disorders, including autism, that make it difficult for him to communicate and control his emotions, among other symptoms. *Id.* ¶¶ 2-3, 25.   As a result of his disabilities, Doe received an Individual Educational Plan ("IEP")[2] from HCSD on December 9, 2021. *Id.* ¶ 29-31;

---

[1] The following statement of facts is derived from the Second Amended Complaint (Doc. 25), the allegations of which the Court must accept as true in ruling on the instant motions to dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983). The Court has also considered the exhibits appended to the Second Amended Complaint ("SAC") (Docs. 25-1–25-6). *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

[2] An IEP is a component of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.   IDEA is a federal statute focused on ensuring that children with disabilities receive "a free appropriate public education…designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). A "child with a disability" includes, *inter alia*, children with speech or language impairments, autism, other health impairments, or specific learning disabilities, and who need special education and related services as a result. 20 U.S.C. §

Doc. 25-2.  HCSD failed to provide Doe's IEP to Explorer and Sarran, however, rendering them unaware of Doe's educational needs and disability. Doc. 25 ¶¶ 32-33. On August 11, 2022, and on other occasions thereafter, Sarran and MacGregor physically assaulted and injured Doe while attempting to restrain and subdue him. *Id.* ¶¶ 34-44, 55-56.  Doe reported the assaults to his mother, who made verbal and written complaints to Explorer and HCSD that went uninvestigated and unreported to the required authorities. *Id.* ¶¶ 50-54, 58, 70.  Instead, Defendants retaliated against A.W. and Doe by writing disciplinary referrals for Doe, making police reports against him, making a false report of abuse by A.W. to the Department of Children and Families, and planting a box cutter in Doe's backpack, leading to his suspension. *Id.* ¶¶ 59-68.

Plaintiffs filed the instant discrimination suit on August 8, 2023. Doc. 1.  On September 6, 2023, the Court *sua sponte* dismissed the Complaint as a shotgun pleading, explaining that each count incorporated all preceding paragraphs of the Complaint, and it impermissibly grouped multiple causes of action and legal theories into single counts. Doc. 10.  Plaintiffs timely filed an Amended Complaint. Doc. 15.

---

1401(3)(A)(i)-(ii). To ensure a child with a disability receives a free and appropriate public education, the school and parents of the disabled child develop an individualized education program ("IEP") together. *Sch. Bd. of Collier Cnty. v. K.C.*, 285 F.3d 977, 979 (11th Cir. 2002). An IEP is:

> a written statement that describes the child's academic performance and how the child's disability affects her education, states measurable educational goals and special needs of the child, establishes how the child's progress will be measured and reported, and states the services available, based on peer-reviewed research, to enable the child to attain the goals, advance educationally, and participate with disabled and nondisabled children.

*K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d 1195, 1201 (11th Cir. 2013); *see also* 20 U.S.C. § 1414(d)(1)(A)(i) (definition of an IEP under IDEA).

However, the Amended Complaint continued to group multiple legal theories within single counts. *Id.*  Accordingly, the Court dismissed the Amended Complaint *sua sponte* on October 6, 2023. Doc. 22.  The Court cautioned Plaintiffs that their failure to file a Second Amended Complaint that corrected the identified deficiencies "may result in dismissal of this action with prejudice[.]" *Id.* at 2.  In both Orders, the Court provided examples of impermissible commingling in the operative pleading, including combining theories of direct liability and *respondeat superior* liability within the same count. *Id.*; Doc. 10 at 3-4.

Plaintiffs filed the Second Amended Complaint ("SAC") on October 18, 2023. Doc. 25.  All Defendants now move to dismiss the SAC because they argue that it is still a shotgun pleading and each count fails to state a claim upon which relief may be granted. Docs. 31, 37.  In addition, Plaintiffs move for leave to proceed anonymously. Doc. 41.

## II.    MOTION TO PROCEED ANONYMOUSLY (Doc. 41)

In their motion for leave to proceed anonymously, Plaintiffs argue that the allegations of abuse, disability discrimination, harassment, and retaliation warrant anonymous filing, because Doe is a minor and the allegations relate to his medical information. Doc. 41 at 1-2.  They assert that the need to protect his privacy and safety outweighs the presumption of openness in judicial proceedings. *Id.* at 2.  Plaintiffs request permission to conceal Doe's identity as well as that of his mother, A.W., because revealing her identity would necessarily reveal Doe's as well. *Id.*  Defendants

have not filed a response in opposition to the motion, which is now subject to treatment as unopposed. *See* M.D. Fla. Local Rule 3.01(c).

Fictitious party pleading is generally not permitted in federal court, and Federal Rule of Civil Procedure 10(a) requires that "every pleading" in federal court "must name all the parties."  There is "a strong presumption in favor of parties' proceeding in their own names," *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011), "to protect the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992).

However, a party may proceed anonymously if the party can establish "a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Id.* at 323, quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).[3]  When considering whether a plaintiff may use a pseudonym, the court is to consider: (1) whether the plaintiff is challenging a governmental activity; (2) whether the plaintiff is required to disclose information of the utmost intimacy; and (3) whether the plaintiff is compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution. *Frank*, 951 F.2d at 323, citing *Stegall,* 653 F.2d at 185.  The *Stegall* factors are not intended as a "rigid, three-step test for the propriety of party anonymity," nor is the presence of one factor dispositive. *Id.*  Rather, courts must consider all circumstances of a given case before deciding whether the customary practice of disclosing the plaintiff's identity is

---

[3] In *Bonner v. Pritchard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

outweighed by the plaintiff's privacy concerns. *Id.*, citing *Wynne & Jaffe,* 599 F.2d 707, 713 (5th Cir. 1979).

Another circumstance courts have found relevant is whether the plaintiff is a minor.  In *Stegall*, the court found "especially persuasive…the fact that plaintiffs are children," although it cautioned that not "all civil rights suits mounted in the name of children may be prosecuted anonymously." 653 F.2d at 186.  In 2007, however, Federal Rule of Civil Procedure 5.2, was adopted which provides that filings that refer to "the name of an individual known to be a minor…may include only…the minor's initials." Fed. R. Civ. P. 5.2.

Courts outside of the Eleventh Circuit that have had occasion to reach the issue have allowed parents to proceed anonymously along with their minor children, because of the likelihood that disclosing the parent's identity would identify the child. *See*, *e.g.*, *Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710, 723-24 (7th Cir. 2011) (where there was the potential for retaliation against the parents and children for their religious beliefs, district court did not err in its decision to permit parent plaintiffs to remain anonymous when "[i]dentifying these adult plaintiffs also would expose the identities of their children"), *vacated on other grounds*, 687 F.3d 840 (7th Cir. 2012); *J.W. v. Dist. of Columbia*, 318 F.R.D. 196, 199 (D.D.C. Aug. 31, 2016) (same, in IDEA action); *D.M. v. Cnty. of Berks*, 929 F.Supp.2d 390, 402 (E.D. Pa. 2013) (the totality of factors favored parents' anonymity in action in which their children had "a clear right to remain anonymous"); *P.M. v. Evans-Brant Cent. School Dist.*, No. 08-cv-168A, 2008 WL 4379490, *3 (W.D.N.Y. Sept. 22, 2008) (in IDEA actions, "[s]ince a parent must

proceed on behalf of a minor child, the protection afforded to the minor would be eviscerated unless the parent was also permitted to proceed using initials"); *Doe v. Alfred*, 906 F.Supp. 1092, 1093 n.1 (S.D. W.Va. 1995) (parents may proceed anonymously in IDEA cases "to protect the family and child from further embarrassment and publicity regarding the child's disability").

Here, too, the totality of the circumstances favor preserving both Plaintiffs' anonymity in this IDEA action.  Doe is a minor child with a disability, and he is challenging a governmental activity. *See Stegall*, 653 F.2d at 185-186.  These factors support the use of a pseudonym rather than merely using his initials pursuant to Rule 5.2.  The Court also agrees with Plaintiffs and the other courts that have addressed the issue that disclosing Doe's mother's name would "eviscerate" the protection offered to Doe. *See P.M.*, 2008 WL 4379490 at *3.  Plaintiffs have demonstrated that Doe's substantial privacy right outweighs the presumption of disclosure of their names.  Accordingly, the motion is due to be granted.

## III.   MOTIONS TO DISMISS (Docs. 31, 37)

### A. Shotgun Pleading

Defendants are correct that the SAC must be dismissed, again, because it continues to be a shotgun pleading that commingles multiple causes of action or legal theories into a single count.

As this Court has explained in two prior Orders, *see* Docs. 10 and 22, a complaint that "commits the sin of not separating into a different count each cause of action or claim for relief" is a shotgun pleading that must be dismissed and repleaded.

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015); *see also Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011) (noting that shotgun pleadings lump claims together in one count); *Kennedy v. Bell S. Telecomm., Inc. (AT&T)*, 546 F. App'x 817, 818, 820 (11th Cir. 2013) (recognizing a "one-claim-per-count rule" under Fed. R. Civ. P. 10(b)).  The Court's past Orders notified Plaintiffs that claims asserted under distinct theories of liability, such as direct liability and vicarious liability under the doctrine of *respondeat superior*, must be set forth in different counts. *See* Doc. 10 at 4 (collecting cases).

Despite this Court's past warnings, nearly every count of the SAC continues to violate the one-claim-per-count rule.  Count IV, for example, is titled "negligence – respondeat superior," but its allegations include a theory of direct negligence, an alternative theory of the negligent failure to act, a reference to *respondeat superior* liability, and a claim of negligent hiring, retention, and supervision—a total of four distinct theories of negligence within a single count.  Counts VI, VII, and XI likewise combine theories of direct liability and *respondeat superior*.  Count VII alleges separate theories of liability against separate defendants within the same count.  And Plaintiff's response in opposition to Sarran and MacGregor's motion to dismiss reveals that Count VIII was intended to allege distinct theories under the Fifth and Fourteenth Amendments, respectively. *See* Doc. 40 at 16-19.[4]

---

[4] The Court provides these examples to illustrate the shotgun nature of the SAC.  Plaintiffs should not assume that its defects are limited to the examples provided by the Court, and must independently ensure that a redrafted complaint complies with the Eleventh Circuit's shotgun pleading rules.

The Court previously warned Plaintiffs that the failure to correct their commingling of claims in a Second Amended Complaint could lead to dismissal with prejudice. Doc. 22 at 2. Defendants now seek such a result. *See* Doc. 31 at 19; Doc. 37 at 3. Nonetheless, the Court will provide Plaintiffs with one last opportunity to correct the shotgun pleading nature of their complaint. Plaintiffs are granted leave to file a Third Amended Complaint. However, to the extent any counts of a Third Amended Complaint contain similar deficiencies, those counts will be dismissed with prejudice, without further notice.

In addition, the Third Amended Complaint must substantiate or eliminate its references to "Defendants Does 1-20." As an exception to the general rule that fictitious-party pleading is not permitted in federal court, plaintiffs are permitted to sue "John Doe" defendants where individuals cannot be identified by name. *See, e.g., Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992). To satisfy the exception, however, the unnamed defendants must be described in such detail that it is possible to identify them. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Further, plaintiffs must move to amend the pleading when they identify the unknown defendants through the discovery process. *See Moulds v. Bullard*, 345 F. App'x 387, 390 (11th Cir. 2009). Here, the Second Amended Complaint omits any description whatsoever of the defendants named as Does 1-20; it also fails to list any specific actions those individuals allegedly undertook. Nor, as discovery has proceeded, have Plaintiffs attempted to amend their pleading to add their identities. To the extent Plaintiffs intend to proceed against these unknown individuals, the Third Amended Complaint

must describe their actions and identities with such specificity that service of process may occur. *See Dean*, 951 F.2d at 1216.  The failure to do so will result in the Doe defendants being dismissed from the action with prejudice, without further notice.

Although the conclusion that the Second Amended Complaint is due to be dismissed resolves the motions to dismiss, the Court will continue to address the other grounds of Defendants' motions in an effort to facilitate the orderly and efficient resolution of this action. *See*, *e.g.*, *Ever Better Eating, Inc. v. Jama's Express LLC*, No. 8:21-CV-1798-CEH-CPT, 2022 WL 17782391, *4 (M.D. Fla. Dec. 19, 2022) (stating same).

## B. Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), quoting Fed. R. Civ. P. 8(a)(2).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Furthermore, mere naked assertions are not sufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  However, the court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id.*

Defendants contend that most of the counts fail to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). The Court will address the sufficiency of the allegations as to each count.

### 1. <u>ADA and Section 504 of the Rehabilitation Act</u>

In Counts I, III, and X, Plaintiffs allege that Defendants discriminated against Doe because of his disability, while Count IX alleges retaliation. Plaintiffs rely upon Section 504 of the Rehabilitation Act of 1973 ("RA"),[5] and Titles II and V of the Americans with Disabilities Act ("ADA").

The RA and the ADA are construed "interchangeably," with "the same standards govern[ing] discrimination claims under both statutes[.]" *Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009); *see also Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000) ("Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa.").

### a. <u>Exhaustion of Administrative Remedies</u>

HCSD and Explorer first argue that Plaintiffs must demonstrate that they have exhausted administrative remedies before asserting causes of action under the RA and ADA. Doc. 31 at 20-23. The Supreme Court has held that plaintiffs are required to exhaust the procedures available under the Individuals with Disabilities Act ("IDEA") before filing actions under the RA or ADA, but only when they seek relief that is

---

[5] Defendants' argument that counts citing "29 U.S.C. § 701 *et seq.*" must be dismissed because "29 U.S.C. § 701 is a policy statement, and does not provide a private right of action," Doc. 31 at, *e.g.*, 4, is meritless. It is clear that Plaintiffs seek relief under Section 504 of the RA, which is codified under 29 U.S.C. §§ 701-794.

available under IDEA. *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 165 (2017), citing 20 U.S.C. § 1415(l).  Where a suit is "premised on the past denial of a free and appropriate education," and "the remedy a plaintiff seeks is not one IDEA provides," a plaintiff need not comply with the exhaustion requirement. *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 150 (2023).

Here, Plaintiffs' suit is premised on the past denial of a free and appropriate education. *E.g.,* Doc. 25 ¶¶ 14, 71.  They seek compensatory damages and unspecified injunctive relief. *Id.* ¶¶ 81, 140; *see also* Doc. 38 at 23-24 *and* Doc. 40 at 21 (conceding punitive damages are not allowed under Section 504 and the ADA).  Compensatory damages are "a form of relief everyone agrees IDEA does not provide." *Luna Perez*, 598 U.S. at 147-48.  Exhaustion is therefore unnecessary for that type of relief. *Id.*; *Powell v. Sch. Bd. of Volusia Cnty., Fla.*, 86 F.4th 881, 884 (11th Cir. 2023).

On the other hand, because injunctive relief is likely an available remedy under the IDEA, Plaintiffs must show they have exhausted administrative remedies to seek that type of relief. *See Sch. Comm. of Burlington v. Dep't of Educ., Mass.*, 471 U.S. 359 (1985) ("[P]rospective injunctive relief" is an "appropriate relief" offered by the IDEA).  Plaintiffs contend that they participated in the administrative process by appearing at an administrative hearing and sending a letter that placed HCSD on notice of all the acts alleged. Doc. 38 at 24-25.  By ignoring A.W.'s complaints, Plaintiffs argue, HCSD demonstrated that exhaustion was futile. *Id.*

Exhaustion of administrative remedies is not required where it would be futile. *N.B. by D.G. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996) (abrogated on other grounds by *Luna Perez*, 598 U.S. 142). The burden of demonstrating futility is on the person seeking exemption from the exhaustion requirement. *Honig v. Doe*, 484 U.S. 305, 327 (1988). Plaintiffs have not met their burden here. First, the SAC entirely omits any allegations regarding exhaustion. The claims are therefore subject to dismissal without prejudice on this ground alone. *See Burnett v. City of Jacksonville, Fla.*, 376 F. App'x 905, 906-07 (11th Cir. 2010) (district court did not err in dismissing complaint without prejudice where it failed to generally allege exhaustion of administrative remedies); *Moragas v. Sch. Bd. of Miami-Dade Cnty.*, No. 19-21517-Civ, 2019 WL 3252229, *5 (S.D. Fla. July 19, 2019) (dismissing complaint without prejudice for same).

Moreover, to the extent the Court considers the factual assertions in Plaintiffs' response in opposition, these assertions do not establish futility. Despite Plaintiffs' vague reference to an administrative hearing, Doc. 38 at 24, they appear to concede that they did not "utilize the elaborate administrative scheme established by [IDEA] before resorting to the courts[.]" *N.B.*, 84 F.3d at 1378 (quotation omitted). This scheme involves an impartial due process hearing in front of a hearing officer, and, if needed, an appeal of the hearing decision by the state educational agency. 20 U.S.C. § 1415(f), (g). In Florida, the due process hearing is overseen by a state administrative law judge in the Florida Division of Administrative Hearings. *See School Bd. of St. Johns Cnty., Fla. v. C.L.*, No. 3:23-cv-864, 2024 WL 2784894, *1 (M.D. Fla. May 30, 2024).

Thus, the fact that Explorer and HCSD staff were not responsive to A.W.'s complaints does not indicate that she could not have received relief from an administrative law judge through the IDEA administrative process.  Accordingly, Plaintiffs have not established the necessary exhaustion of administrative remedies, and their requests for injunctive relief with respect to Counts I, III, and X are due to be dismissed.

  b.  Official or Individual Capacity

The SAC does not specify whether Sarran and MacGregor are being sued in their official or individual capacity for the discrimination and retaliation claims under Section 504 and the ADA.[6]  The case caption indicates they are being sued in both capacities. Doc. 1 at 1.

As Sarran and MacGregor correctly argue, there is no individual capacity liability for a claim of disability discrimination under Section 504 and Title II of the ADA. *See, e.g.*, *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005); *Bosarge v. Mobile Area Water & Sewer Serv.*, No. 20-14298, 2022 WL 203020, *6 (11th Cir. Jan. 24, 2022).  Sarran and MacGregor argue that these counts are due to be dismissed with prejudice as a result. Doc. 37 at 7-11.  Plaintiff's response in opposition appears to concede that Sarran and MacGregor cannot be sued under these statutes in their individual capacity, but argues that they can be named in their official capacity. *See* Doc. 40 at 10-12.  Sarran and MacGregor make no arguments with respect to official capacity liability under Section 504 and the

---

[6] The Third Amended Complaint must specify whether each count alleged against Sarran or MacGregor is asserted in their individual or official capacity.

ADA. Accordingly, the Court will assume that Counts I, III, and X are asserted against them in their official capacity. To the extent the counts are asserted against Sarran and MacGregor in their individual capacity, they are due to be dismissed.

The anti-retaliation provision of the ADA, found in Title V, does allow for individual capacity liability. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003) ("[A]n individual may be sued privately in his or her personal capacity" for violating the anti-retaliation provision of the ADA); *cf.* Doc. 37 at 19. In Count IX, then, Sarran and MacGregor may be sued in either their individual or official capacity.

### c. Counts I, III, and X: Disability Discrimination

Counts I, III, and X allege disability discrimination.[7] In Count III, Plaintiffs allege that HCSD, Explorer, and MacGregor discriminated against Doe in violation of both Section 504 and the ADA. Count I asserts a cause of action against Sarran and MacGregor for Section 504 discrimination taking the form of "harassment," and Count X asserts a cause of action against HCSD and Explorer for "failure to prevent" discrimination under Section 504. Although it is unclear whether Section 504 or the ADA create claims under "harassment" and "failure to prevent" theories in the context of education, *see, e.g.*, *Long v. Murray Cnty. Sch. Dist.*, No. 4:10-CV-00015, 2012 WL 2277836, *25 (N.D. Ga. May 21, 2012) (identifying a separate cause of action for disability harassment only for peer-on-peer claims), Defendants do not move to

---

[7] Counts I and III contain allegations that Defendants retaliated against Doe, but Plaintiffs' oppositions clarify that they are not alleging the cause of action of retaliation in these counts. Doc. 38 at 10; Doc. 40 at 9.

dismiss on this basis.  To the extent all three counts allege permissible theories of disability discrimination, then, the Court will discuss them together.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Likewise, section 504 of the RA, codified under 29 U.S.C. § 794, "prohibits discrimination on the basis of disability by all programs and activities that receive federal funding." *Foulke v. Weller*, No. 22-13942, 2024 WL 2761778, at *9 n.8 (11th Cir. May 29, 2024), citing 29 U.S.C. § 794(a). Section 504 is primarily focused on employment discrimination, but Congress has enacted subsequent legislation to "clarify that Section 504 [applies] to other forms of discrimination" as well. *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 821 (11th Cir. 1998).

To state a claim for disability discrimination under Section 504 and the ADA, a plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of [his] disability." *Ingram v. Kubik*, 30 F.4th 1241, 1256-57 (11th Cir. 2022) (quotation omitted).  To satisfy the third prong, Plaintiffs must demonstrate that Doe suffered adverse action "solely by reason" of his disability, and not that the alleged

mistreatment was only "partly based on his disability." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

Plaintiffs plausibly allege that Doe is a qualified individual with a disability who was denied the opportunities and benefits of a public education.  Doc. 25 ¶¶ 25, 28-29, 32-33, 68-72, 80-81, 138, 140.  Accordingly, the sufficiency of the discrimination counts turns on the third prong: whether the discrimination was because of Doe's disability.

Count I alleges that Sarran and MacGregor assaulted Doe, planted a box cutter in his bag, and forced him to sign documents without his mother's consent. Doc. 25 ¶¶ 77-78.  They "specifically targeted" Doe "because they knew that his disability limited his ability to clearly communicate feelings, emotions, and events." *Id.* ¶ 79.[8] This allegation is sufficient, at this stage, to plausibly allege that he was discriminated against by reason of his disability.

Count III alleges that HCSD, Explorer, and MacGregor discriminated against Doe by not providing him educational instruction in accordance with his IEP or reviewing his IEP, and by physically and mentally abusing him. Doc. 25 ¶ 93.  He suffered adverse actions when Defendants wrote him multiple referrals, filed police reports against him, and planted a box cutter in his bookbag. *Id.* ¶ 94.  This count lacks any allegations regarding causation, and it does not allege that Explorer or MacGregor were even aware of Doe's disability. *See id.* ¶ 33.  Because it does not plausibly allege

---

[8] *But see id.* ¶ 33 ("As a result, Explorer and Sarran were unaware of details of John's disability and were unable to provide adequate accommodations to John.").

that the alleged discrimination occurred solely by reason of his disability, Count III does not state a claim.

In Count X, Plaintiffs allege that HCSD and Explorer allowed Doe to be physically abused, failed to properly investigate the situation, failed to formally notify A.W., failed to provide counseling services to Doe, and failed to change their policies and procedures to ensure that students were no longer subject to this type of discrimination. Doc. 25 ¶¶ 137-39.  Count X, too, does not plausibly allege that these actions occurred solely by reason of Doe's disability.

Because Plaintiffs seek compensatory damages, they are also required to allege that the defendants engaged in "intentional discrimination." *Ingram*, 30 F.4th at 1257. Intentional discrimination is demonstrated through the "deliberate indifference" of a defendant. *See*, *e.g.*, *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019).  Under this "exacting standard," a plaintiff must show that the defendant "knew that harm to a federally protected right was substantially likely and failed to act on that likelihood." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012) (quotations omitted).

Moreover, the individual who is deliberately indifferent must be an "*official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the organization's behalf and who has *actual knowledge* of discrimination in the organization's programs and fails to adequately respond." *Id.* at 349, quoting *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290 (1998). (modifications accepted, including emphasis).  The Eleventh Circuit has held that such

an official must have "substantial supervisory authority," such that her actions "constitute an official decision by the entity itself not to remedy the misconduct." *Silberman*, 927 F.3d at 1135 (quotations omitted).  In *Silberman*, the court concluded that the bus drivers employed by the defendant who had allegedly engaged in the discriminatory acts did not qualify as "officials" for the purpose of deliberate indifference. *Id.* at 1136.  As a result, the court affirmed the district court's finding that the complaint failed to state a claim for compensatory damages under section 504 or Title II. *Id.* at 1136-37.

Plaintiffs argue that Sarran may be considered an "official" for monetary damages because she was involved in the disciplinary action taken against Doe and was "well aware of all the facts." Doc. 40 at 11.  The factual allegations in the SAC, however, contain no information suggesting that Sarran had "substantial supervisory authority" such that her actions "constitute an official decision" by Explorer or HCSD. *See Silberman*, 927 F.3d at 1135; *cf. J.S v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 989-90 (11th Cir. 2017) (on summary judgment, evidence demonstrated teachers held supervisory authority over the discriminatory party and were responsible for various policies, creating issue of fact as to whether they served as "officials" for deliberate indifference).  Accordingly, Count I does not state a claim for compensatory damages with respect to Sarran.

In contrast, MacGregor's position as assistant principal is likely enough to plausibly allege that he is an "official" for the purpose of deliberate indifference. Doc. 25 ¶ 40.  In *J.S.*, the Eleventh Circuit explained that a principal, "as the highest-ranking

school official on site at the school, is equipped with many…means of deterring or stopping…harassment of students, such as admonishing the teacher, conducting a thorough preliminary investigation, swiftly reporting the abuse, and monitoring the teacher's behavior." 877 F.3d at 988.  Although the SAC does not contain allegations about MacGregor's supervisory responsibilities, the Court may reasonably infer that he had authority to take corrective action by virtue of his position as assistant principal. In addition, MacGregor plainly had actual knowledge of the alleged discrimination. Accordingly, Count I states a claim for compensatory damages with respect to MacGregor, in his official capacity.[9]

### d.  Count IX: Retaliation

In Count IX, Plaintiffs allege that all Defendants retaliated against Doe in violation of Section 504 and Title V of the ADA.  "The ADA prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016), citing 42 U.S.C. § 12203(a).  The anti-retaliation provision has been incorporated into the RA as well. *See Atchison v. Bd. of Regents of the Univ. Sys. of Ga.*, 802 F. App'x 495, 503 (11th Cir. 2020).

---

[9] The Court notes that if Counts III and X had plausibly alleged the element of causation, MacGregor's actual knowledge and position would likely be enough to establish deliberate indifference with respect to HCSD's and Explorer's liability for compensatory damages in those counts as well, as it is a reasonable inference that he was acting within the course and scope of his employment. *See* Section III(B)(2)(a), *infra*.

To prevail on a retaliation claim, a plaintiff must demonstrate that she (1) engaged in statutorily protected activity; (2) suffered an adverse action; and (3) the adverse action was causally related to the protected expression. *See, e.g., Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). A plaintiff engages in statutorily protected activity when she opposes a practice made unlawful by Section 504 or the ADA, or that she subjectively believes—and that belief is not objectively unreasonable—to be unlawful. *See Covel v. Cmty. Physicians of N. Port, P.A.*, No. 23-10853, 2024 WL 1923256, *3 (11th Cir. May 1, 2024). To establish the causal connection element, the plaintiff must show that the protected activity and the adverse action were not "wholly unrelated." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1327 (11th Cir. 1999).

Count IX alleges that Plaintiffs complained of discrimination against Doe by reporting Sarran and MacGregor's physical and mental abuse and the fact that Doe was not receiving the accommodations required by his IEP. Doc. 25 ¶¶ 50, 58, 63, 70, 131, 133. After A.W. voiced these concerns, Doe suffered adverse actions in the form of unwarranted disciplinary actions, police reports, and having a box cutter planted in his bag, which led to his suspension. *Id.* ¶¶ 59-61, 64-68, 132-33; *cf.* Doc. 31 at 11 (arguing Count IX failed to allege any harm to Doe). Count IX adequately alleges a claim of retaliation.

2. **Negligence Torts**

Count IV alleges common-law negligence against HCSD and Explorer, while Count V alleges negligence per se against Explorer and MacGregor.  Count VI alleges negligent infliction of emotional distress ("NIED") against HCSD.[10]

a.  Count IV: Common-Law Negligence

Count IV's allegations that HCSD and Explorer acted negligently toward A.W. and Doe contain alternative theories of both direct and vicarious liability.  *See* Section III(A), *supra*.   With respect to direct liability, Plaintiffs "must establish the four elements of duty, breach, proximate causation, and damages." *Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla. 2015).  A legal duty may arise from "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).   In the context of education, the Florida Supreme Court has held that the "special relationship" between students and school districts "requires a school to reasonably supervise its students during all activities that are subject to the control of the school[.]" *Limones*, 161 So. 3d at 390.  "This duty to supervise requires teachers and other applicable school employees to act with reasonable care under the circumstances." *Id.*, citing *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 571 (11th Cir. 1997).

_____

[10] HCSD and Explorer concede that Florida has waived sovereign immunity in negligence actions, via Fla. Stat. § 768.28.  Doc. 31 at 23-24; *see* Section III(B)(2)(b), *infra*.

Plaintiffs plausibly allege that HCSD and Explorer failed to exercise their duty to supervise when "investigating allegations of abuse" and "overseeing staff responsible" for Doe's care.  Doc. 25 ¶¶ 53, 70-71, 98-100.  As a result of this breach, Doe was unable to enjoy the opportunities and benefits of a public education.  *Id.* ¶¶ 28-33, 68-73, 103.  Plaintiffs also plausibly allege that A.W. suffered damages, including being falsely accused of physically abusing Doe, being forced to withdraw Doe from Explorer, and suffering mental anguish.  *Id.* ¶¶ 61, 70-73.  Thus, Count IV states a claim for negligence against HCSD and Explorer under a theory of direct liability.

With respect to vicarious liability, the doctrine of *respondeat superior* holds that "[a]n employer may sometimes be liable for an employee's negligent acts committed within the course and scope of employment—even if the employer is without fault." *Tsuji v. Fleet*, 366 So. 3d 1020, 1031 (Fla. 2023).  "[A]n action falls within the scope of employment if the conduct: (1) is of the kind the employee was employed to perform; (2) occurred within the time and space limits of the employee's employment; and (3) was activated at least in part by a purpose to serve the employment." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009).

To state a claim for negligence under a theory of vicarious liability, then, Plaintiffs must plausibly allege that employees of HCSD and Explorer committed negligence while acting within the course and scope of their employment. *See De La Cruz v. Nordstrom, Inc.*, No. 19-80109-CIV, 2019 WL 3412172, *2 (S.D. Fla. May 2, 2019).  But Count IV fails to identify any specific actions by Sarran, MacGregor, or

other HCSD or Explorer employees that breached the duty of care. *See* Doc. 25 ¶¶ 102. It therefore does not plausibly allege that any employees committed negligence or that they acted within the course and scope of their employment when acting negligently. To the extent Count IV is brought under a theory of vicarious liability, it is due to be dismissed.

### b. Count V: Negligence *Per Se*

In Count V, Plaintiffs allege that Explorer and MacGregor acted negligently toward Doe and A.W. under a theory of negligence per se,[11] whereby the duty owed to Plaintiffs is imported from Florida Statutes § 39.201. Doc. 25 ¶¶ 105-111.  Under that statute, if a person or entity "knows, or has reasonable cause to suspect," that a child is abused, they must make a report to the Department of Children and Families. Fla. Stat. § 39.201.  However, that statute "does not give rise to a civil cause of action." *Estate of Rotell v. Kuehnle*, 38 So. 3d 783, 786 n.3 (Fla. 2d DCA 2010); *see also Doe v. School Board of Miami-Dade Cnty.*, 403 F.Supp.3d 1241, 1268 (S.D. Fla. 2019) (dismissing negligence per se claim based on Fla. Stat. § 39.201); *Hatfield v. Sch. Dist. of Sarasota Cnty, Fla.*, No. 8:10-CV-1893-TBM, 2011 WL 13302419, *3, *5 n.9 (M.D. Fla. June 29, 2011) ("Fla. Stat. § 39.201 does not create a duty, the breach of which

---

[11] Under the theory of negligence per se, the violation of a statute establishes the breach element of a negligence cause of action. *See Faircloth v. Main Street Entertainment, Inc.*, --- So.3d ---, 2024 WL 972238, *3 (Fla. March 7, 2024) ("The plaintiff must also establish 1) that he is of a class the statute was intended to protect; 2) that he suffered injury of the type the statute was designed to prevent; and 3) that violation of the statute was the proximate cause of the injury.") (quotation omitted).

gives rise to a cause of action.").  This count is therefore due to be dismissed with prejudice.

### c.   Count VI: Negligent Infliction of Emotional Distress

In Count VI, Plaintiffs allege that HCSD engaged in negligent actions and omissions that amounted to NIED against Doe. Doc. 25 ¶¶ 113-115.  In Florida, "persons who suffer a physical injury as a result of emotional distress arising from their witnessing the death or injury of a loved one may maintain a cause of action for negligent infliction of emotional distress." *Zell v. Meek*, 665 So. 2d 1048, 1050 (Fla. 1995).  To allege NIED, "(1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person." *Id.* at 1054.

Here, Plaintiffs do not claim that the physical injuries Doe allegedly suffered were caused by the psychological trauma of witnessing the negligent injury of another. Count VI therefore does not state a claim upon which relief may be granted.

### 3.   **Non-Negligence Torts**

In Count II, Plaintiffs allege civil battery against Sarran and MacGregor, while Counts VII and XI assert various claims of intentional infliction of emotional distress ("IIED").  Count IX alleges a violation of 42 U.S.C. § 1983.

a. Count II: Battery

Count II alleges that Sarran and MacGregor intentionally subjected Doe to unwanted harmful and offensive contact that resulted in bodily harm. Doc. 25 ¶¶ 84-90. Plaintiffs assert the cause of action of civil battery, but cite the criminal statute, Fla. Stat. § 784.03. *Id.* Nevertheless, there is "no difference between the tort of battery and the crime of battery" under Florida law. *Mason v. Fla. Sheriffs' Self-Insurance Fund*, 699 So. 2d 268, 270 n.1 (Fla. 5th DCA 1997). The tort of battery requires "(1) the intent to cause a harmful or offensive contact with another person, and (2) an offensive contact that directly or indirectly results." *Baxter v. Roberts*, 54 F.4th 1241, 1272 (11th Cir. 2022). Additionally, "[t]o establish the required intent to commit battery, the plaintiff must show that defendant exhibits a deliberate intent to injure or engages in conduct which is substantially certain to result in injury." *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011). Viewing the allegations in the light most favorable to Plaintiffs, they plausibly allege facts establishing that Sarran and MacGregor intentionally injured Doe through offensive contact that was substantially certain to result in injury. Therefore, Count II is not due to be dismissed, but the erroneous reference to Fla. Stat. § 784.03 must be omitted from an amended pleading.

b. Counts VII and XI: Intentional Infliction of Emotional Distress

In Count VII, Plaintiffs allege that HCSD and Explorer committed IIED against A.W. and Doe, and that Sarran and MacGregor committed IIED against only Doe. Doc. 25 ¶¶ 117-120. Count VII—as well as Count XI—also alleges that HCSD and

Explorer are vicariously liable for actions and omissions against A.W. that amounted to IIED. *Id.* ¶¶ 117-120, 143-146.

To state a claim for IIED, Plaintiffs must plausibly allege: "(1) the defendant's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized society; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Knezevich v. Carter*, 805 F. App'x 717, 725 (11th Cir. 2020) (citations omitted). Outrageous conduct is a "particularly high" bar in Florida. *Patterson v. Downtown Medical and Diagnostic Center, Inc.*, 866 F. Supp. 1379, 1383 (M.D. Fla. 1994).

First, Plaintiffs allege that Sarran and MacGregor perpetuated extreme and outrageous conduct by committing multiple batteries against Doe. Doc. 25 ¶ 118. This allegation is sufficient to state a claim for IIED. The alleged conduct rises to the level of outrageousness because of Sarran and MacGregor's roles as Doe's teacher and assistant principal. *See Gallogly v. Rodriguez*, 970 So. 2d 470, 472 (Fla. 2d DCA 2007), quoting Restatement (Second) of Torts § 46 cmt. e (1965) ("The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests."); *Lashley v. Bowman*, 561 So. 2d 406, 409-410 (Fla. 5th DCA 1990) ("[O]utrageousness is more likely to be found where some relationship exists that gives the defendant actual or apparent authority over another

or power to affect his interests."); *see also Lightning v. Roadway Express*, 60 F.3d 1551, 1558 (11th Cir. 1995) ("[T]he existence of a special relationship in which one person has control over another…may produce a character of outrageousness that otherwise might not exist.") (citations omitted).  Plaintiffs therefore plausibly allege that Sarran and MacGregor, by abusing their positions of authority, engaged in behavior that is outrageous and beyond all bounds of decency, and that this misconduct caused Doe to experience severe emotional distress.

However, Count VII does not state a claim for IIED with respect to A.W. or HCSD and Explorer.  Although A.W. is listed in the heading of Count VII, the allegations within Count VII do not claim that she experienced emotional distress or was otherwise affected by the actions toward Doe.   Count VII also fails to plausibly allege that HCSD and Explorer are directly liable for IIED against either A.W. or Doe. The claim that they "failed to intervene and did not provide [Doe] any support or resources and never attempted to limit its exposure to the harm" Doc. 25 ¶ 118, does not establish conduct that goes "beyond all bounds of decency." *See Knezevich*, 805 F. App'x at 725.

To the extent Count VII alleges vicarious liability against HCSD and Explorer, it is due to be dismissed because of sovereign immunity.  Under Florida's sovereign immunity statute, "[t]he state or its subdivisions shall not be liable in tort for the acts or omissions of an…employee…committed while acting outside the scope of his or her employment or committed with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. §

768.28(9)(a).  Count VII expressly alleges that Defendants' conduct was "wanton, malicious, and designed to inflict physical, emotional and mental harm[.]" Doc. 25 ¶ 120.  Accordingly, HCSD and Explorer cannot be held vicariously liable for it.

Count XI is titled "respondeat superior," and alleges that HCSD and Explorer are liable under this theory for the injuries caused by the "acts and omissions of DEFENDANTS and DOES 1-20." Doc. 25 ¶¶ 143.  The Court will interpret the actions attributed to "HCSD and Explorer" in the following paragraph to refer to conduct by their employees. *See id.* ¶ 144.  This conduct includes retaliating against A.W. by making a false report of child abuse against her and planting a box cutter in Doe's bookbag. *Id.*  Although the alleged conduct likely rises to the level of extreme and outrageous, the description of it as "wanton, malicious, and designed to inflict physical, emotional and mental harm on A.W.," *id.* ¶ 146, places this count squarely within the doctrine of sovereign immunity as well. Fla. Stat. § 768.28(9)(a). Accordingly, Count XI is due to be dismissed.

### c. Count VIII: 42 U.S.C. § 1983

In Count VIII, Plaintiffs allege that HCSD, Explorer, Sarran, and MacGregor discriminated against Doe, in violation of the private right established by 42 U.S.C. § 1983 that creates civil liability for any person that deprives a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws[.]"  Specifically, Plaintiffs allege that Defendants deprived Doe of his Fifth and Fourteenth Amendment rights by physically attacking him, subjecting him to false

disciplinary referrals and police reports, and suspending him without a proper hearing. Doc. 25 ¶¶ 124-126.[12]

Count VIII does not specify which rights under the Fifth and Fourteenth Amendments were violated by these defendants' actions. One allegation of the SAC refers to a lack of due process, Doc. 25 ¶ 125, which suggests Count VIII is premised on a deprivation of Doe's due process rights. The Fifth Amendment's due process clause applies only to the federal government. *See*, *e.g.*, *Cotriss v. City of Roswell*, No. 19-12747, 2022 WL 2345729, *6 (11th Cir. June 29, 2022) (citation omitted). Plaintiffs argue in their response in opposition that Defendants are subject to the Fifth Amendment because they may be recipients of federal funding who were "acting in their official capacity as agents of the federal government." Doc. 40 at 16-17. They offer no authority for the dubious proposition that a recipient of federal funding is an agent of the federal government for this purpose. In any event, the existing allegations of the SAC do not establish a violation of the Fifth Amendment. To the extent Count VIII is asserted under the Fifth Amendment, it is due to be dismissed.

With respect to the Fourteenth Amendment, "[t]he Due Process Clause provides two different kinds of constitutional protections: procedural due process and substantive due process." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013).

---

[12] Although this count is titled "Discrimination," its allegations do not appear to assert a cause of action for disability discrimination. Nor could they, pursuant to *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997) ("[A] plaintiff may not maintain a section 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA.").

The procedural and substantive components of the due process clause protect different interests, whose deprivation is established according to different standards. *See Cotriss*, 2022 WL 2345729 at *5. Plaintiffs argue in their response in opposition that they plausibly alleged a deprivation of both procedural and substantive due process, but offer no explanation with respect to substantive due process. *See* Doc. 40 at 17-19. Moreover, their response refers to several different theories regarding which fundamental right Doe was allegedly deprived of. *Id.* In determining whether Count VIII states a claim upon which relief may be granted, the Court's review is limited to the four corners of the complaint rather than Plaintiffs' response in opposition to a motion to dismiss. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). To the extent Plaintiffs intend to pursue a § 1983 claim in a Third Amended Complaint, they must plausibly allege, with specificity, the specific Fourteenth Amendment right that Defendants violated and facts that support the applicable standard.

Finally, the SAC does not plausibly allege municipal liability under § 1983 with respect to HCSD. Local governing bodies, including school districts, may be sued under § 1983 only when the allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Although these policies need not receive "formal approval through the body's official decision-making channels," evidence of a pervasive practice or custom is necessary for the imposition of liability. *L.A. Cnty. v. Humphries*, 562 U.S. 29, 36

(2010).  Here, despite a bare reference to "policies and procedures" in an unrelated factual allegation, Doc. 25 ¶ 63; *cf.* Doc. 38 at 18, the SAC does not plausibly allege that Doe was injured by HCSD's implementation of the type of policy contemplated by *Monell*.  Count VIII therefore does not state a claim for municipal liability under § 1983.

## IV.    CONCLUSION

The Second Amended Complaint is due to be dismissed, again, as a shotgun pleading.  As discussed *supra*, the Court will afford Plaintiffs one final opportunity to redraft their pleading.  The failure to timely file a Third Amended Complaint will result in the dismissal of this action, without prejudice and without further notice.

To the extent a Third Amended Complaint remains a shotgun pleading, it will be subject to dismissal with prejudice, without further notice.  Moreover, Plaintiffs are directed to review the Court's conclusions with respect to Rule 12(b)(6) when drafting a Third Amended Complaint.

Accordingly, it is **ORDERED**:

1.    Plaintiffs' Motion to Proceed Anonymously (Doc. 41) is GRANTED.

2.    Defendants School Board of Hernando County and Explorer K-8's Motion to Dismiss Plaintiffs' Second Amended Complaint, Motion for a More Definite Statement, and Incorporated Memorandum of Law (Doc. 31), and Defendants Sabreena Sarran and Andrew MacGregor's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 37) are GRANTED.

3.    The Second Amended Complaint is DISMISSED without prejudice, except as to Count V. Count V, negligence per se, is dismissed with prejudice.

4.    Plaintiffs are granted leave to file a Third Amended Complaint within FOURTEEN (14) DAYS from the date of this Order.  The failure to timely file a Third Amended Complaint will result in the dismissal of this action, without prejudice and without further notice.

**DONE** and **ORDERED** in Tampa, Florida on August 26, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties