# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JOHN DOE BY AND THROUGH
A.W., and A.W.

      Plaintiffs,

v.                                                  Case No: 8:23-cv-1772-CEH-AAS

HERNANDO COUNTY SCHOOL
DISTRICT, EXPLORER K-8,
SABREENA SARRAN, ANDREW
MACGREGOR and DOES 1-20,

      Defendants.

_____

## <u>ORDER</u>

This matter is before the Court on Defendants Hernando County School District and Explorer K-8's Motion to Dismiss Third Amended Complaint (Doc. 84), and Defendants Sabreena Sarran and Andrew MacGregor's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 85). Plaintiffs John Doe and A.W. have responded in opposition to both motions (Docs. 104, 105).

Also before the Court is Plaintiff's Motion to Amend Amended Complaint (Doc. 116), which all Defendants oppose (Docs. 117, 118).

Upon review and full consideration, the Court will grant-in-part and deny-in-part the motions to dismiss, as set forth herein, and grant Plaintiffs leave to file a Fourth Amended Complaint for certain limited purposes in strict compliance with this Order.

## I.    BACKGROUND[1]

Plaintiffs filed this discrimination suit on August 8, 2023, alleging that Doe was discriminated against and physically abused by a teacher and assistant principal at his school. Doc. 1.  The Court dismissed, *sua sponte*, the initial Complaint and the Amended Complaint because they were shotgun pleadings that impermissibly grouped multiple causes of action and legal theories into single counts. Docs. 10, 22.  Plaintiffs then filed a Second Amended Complaint, which Defendants moved to dismiss. Docs. 25, 31, 37.

On August 26, 2024, the Court granted Defendants' motions to dismiss the Second Amended Complaint, because it continued to violate the one-claim-per-count rule. Doc. 72 ("the prior Order") at 7-10.  The Court also made substantive findings regarding the other grounds of Defendants' motions to dismiss, which argued that the pleading did not state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* at 10-32.  The Court noted that it would "afford Plaintiffs one final opportunity to redraft their pleading," and directed Plaintiffs to "review the Court's conclusions with respect to Rule 12(b)(6) when drafting a Third Amended Complaint." *Id.* at 32.

---

[1] The following statement of facts is derived from the Third Amended Complaint (Doc. 76), the allegations of which the Court must accept as true in ruling on the instant motions to dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983). The Court has also considered the exhibits appended to the Third Amended Complaint (Docs. 76-1 to 76-9). *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

The Third Amended Complaint ("TAC") alleges that Plaintiff John Doe is an eight-year-old African American male, and Plaintiff A.W. is his mother and legal guardian. Doc. 76 ¶¶ 1, 4, 17-18.  In 2022, Doe was a student at Explorer K-8, a school within Hernando County School District. *Id.* ¶¶ 17, 23.  Sabreena Sarran was his special education teacher, and Andrew MacGregor was an assistant principal at Explorer. *Id.* ¶¶ 21-22.

Plaintiffs allege that Doe suffers from various medical disorders and disabilities that make it difficult for him to communicate and control his emotions, among other symptoms. *Id.* ¶¶ 2-3, 24.  As a result of his disabilities, Doe received an Individual Educational Plan ("IEP")[2] from HCSD on December 9, 2021. *Id.* ¶¶ 28-29.  HCSD failed to provide Doe's IEP to Explorer and Sarran, however, rendering them unaware of Doe's educational needs and disability. *Id.* ¶¶ 31-32.

---

[2] An IEP is a component of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*  IDEA is a federal statute focused on ensuring that children with disabilities receive "a free appropriate public education…designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). A "child with a disability" includes, *inter alia*, children with speech or language impairments, autism, other health impairments, or specific learning disabilities, and who need special education and related services as a result. 20 U.S.C. § 1401(3)(A)(i)-(ii). To ensure a child with a disability receives a free and appropriate public education, the school and parents of the disabled child develop an individualized education program ("IEP") together. *School Bd. of Collier Cnty. v. K.C.*, 285 F.3d 977, 979 (11th Cir. 2002). An IEP is:

> a written statement that describes the child's academic performance and how the child's disability affects her education, states measurable educational goals and special needs of the child, establishes how the child's progress will be measured and reported, and states the services available, based on peer-reviewed research, to enable the child to attain the goals, advance educationally, and participate with disabled and nondisabled children.

*K.A. ex rel. F.A. v. Fulton Cnty. School Dist.*, 741 F.3d 1195, 1201 (11th Cir. 2013); *see also* 20 U.S.C. § 1414(d)(1)(A)(i) (definition of an IEP under IDEA).

On August 11, 2022, and on other occasions thereafter, Sarran and MacGregor physically assaulted and injured Doe while attempting to restrain and subdue him. *Id.* ¶¶ 34-44, 55-56.  Doe reported the assaults to his mother, who made verbal and written complaints to Explorer and HCSD that went uninvestigated and unreported to the required authorities. *Id.* ¶¶ 48-54, 58.  Instead, Defendants retaliated against A.W. and Doe by writing disciplinary referrals for Doe, making police reports against him, making a false report of abuse by A.W. to the Department of Children and Families, and planting a box cutter in Doe's backpack, leading to his suspension. *Id.* ¶¶ 59-68.

The TAC alleges the following causes of action, in 42 counts:

| Count | Cause of Action | Defendant (capacity) |
|---|---|---|
| 1 | Disability discrimination: harassment (ADA) | MacGregor (official) |
| 2 | Disability discrimination: harassment (ADA) | Sarran (official) |
| 3 | Disability discrimination: harassment (RA) | MacGregor (official) |
| 4 | Disability discrimination: harassment (RA) | Sarran (official) |
| 5 | Battery | MacGregor (individual) |
| 6 | Battery | Sarran (individual) |
| 7 | Disability discrimination (ADA) | HCSD |
| 8 | Disability discrimination (ADA) | Explorer |
| 9 | Disability discrimination (ADA) | MacGregor |
| 10 | Disability discrimination (RA) | HCSD |
| 11 | Disability discrimination (RA) | Explorer |
| 12 | Disability discrimination (RA) | MacGregor |
| 13 | Negligence: direct liability | HCSD |
| 14 | Negligence: direct liability | Explorer |
| 15 | Negligence: direct liability | HCSD |
| 16 | Negligence: direct liability | Explorer |
| 17 | Negligence: vicarious liability | HCSD |
| 18 | Negligence: vicarious liability | Explorer |
| 19 | Negligence: vicarious liability | HCSD |
| 20 | Negligence: vicarious liability | Explorer |
| 21 | Intentional infliction of emotional distress (Doe) | Sarran (individual) |
| 22 | Intentional infliction of emotional distress (Doe) | MacGregor (individual) |
| 23 | Intentional infliction of emotional distress (A.W.) | Sarran (individual) |

| 24 | Intentional infliction of emotional distress (A.W.) | MacGregor (individual) |
| 25 | § 1983: substantive due process | HCSD |
| 26 | § 1983: substantive due process | Sarran (official) |
| 27 | § 1983: substantive due process | MacGregor (official) |
| 28 | § 1983: procedural due process | HCSD |
| 29 | § 1983: procedural due process | Sarran (official) |
| 30 | § 1983: procedural due process | MacGregor (official) |
| 31 | Retaliation (RA) | HCSD |
| 32 | Retaliation (RA) | Explorer |
| 33 | Retaliation (RA) | Sarran (official) |
| 34 | Retaliation (RA) | MacGregor (official) |
| 35 | Retaliation (ADA) | HCSD |
| 36 | Retaliation (ADA) | Explorer |
| 37 | Retaliation (ADA) | Sarran (official) |
| 38 | Retaliation (ADA) | MacGregor (official) |
| 39 | Disability discrimination: failure to prevent (RA) | HCSD |
| 40 | Disability discrimination: failure to prevent (RA) | Explorer |
| 41 | Disability discrimination: failure to prevent (ADA) | HCSD |
| 42 | Disability discrimination: failure to prevent (ADA) | Explorer |

Doc. 76.

## II.    MOTIONS TO DISMISS

Defendants move to dismiss the TAC on various grounds. Docs. 84, 85. As set forth below, the motions are due to be granted-in-part, to the extent that many of the counts are due to be dismissed. Plaintiffs assert in their response in opposition that they "should be allowed to seek leave to amend if the Court believes that the Amended Complaint is inadequate in any way." Doc. 104 at 34. The Court disagrees. The TAC represents Plaintiffs'—who are represented by counsel—fourth attempt to draft an effective pleading. The Court does not find that the interests of justice require them to be afforded a fifth opportunity to correct the pleading deficiencies that remain, particularly at this late stage of the litigation. *See*, *e.g.*, *Blackburn v. Shire US Inc.*, 18

F.4th 1310, 1317-18 (11th Cir. 2021) (district court did not abuse its discretion when it denied a motion to amend certain claims that it had dismissed with prejudice after multiple rounds of motion practice, based on its finding that permitting such a late amendment "would be contrary to promoting judicial efficiency."). Accordingly, to the extent that any count of the TAC fails to state a claim or is otherwise deficient, the count will be dismissed with prejudice.

## A. **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), quoting Fed. R. Civ. P. 8(a)(2). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, the court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

### B. <u>Individual Defendants' Motion to Dismiss</u> (Doc. 85)

First, Sarran and MacGregor argue that the causes of action alleged against them in their official capacity that seek monetary damages must be dismissed under the Eleventh Amendment's sovereign immunity doctrine. Doc. 85 at 5-6. Those counts—1, 2, 3, 4, 9, 12, 26, 27, 29, 30, 33, 34, 37, 38—are brought under the ADA, Section 504, and Section 1983. Doc. 76. Plaintiffs respond that states waive their Eleventh Amendment immunity for claims brought under Section 504 by accepting federal funding, and that Congress abrogated Eleventh Amendment immunity for claims brought under Title II of the ADA. Doc. 105 at 7-8. Plaintiffs do not directly address the Section 1983 claims.

The Eleventh Amendment provides immunity to state officials acting in their official capacity from being sued for damages in federal court. U.S. Const. amend. XI; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Dupree v. Owens*, 92 F.4th 999, 1005 (11th Cir. 2024). Both parties appear to assume, without discussion, that Sarran and MacGregor are state officials for the purposes of Eleventh Amendment immunity. However, only *states*, not counties, municipalities, or similar political subdivisions, are entitled to Eleventh Amendment protection. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). And local school districts and school boards are not protected by the Eleventh Amendment unless they can be considered an "arm of the state." *See, e.g., id.* at 280-81; *Travelers Indemn. Co. v. School Bd. of Dade Cnty., Fla.*, 666 F.2d 505 (11th Cir. 1982) (county school board in Florida was not entitled to immunity); *see also Lightfoot v. Henry Cnty. School Dist.*, 771 F.3d 764 (11th Cir. 2014)

(Georgia school districts are not arms of the state for purposes of sovereign immunity); *Stewart v. Baldwin Cnty. Bd. of Educ.*, 908 F.2d 1499, 1509-11 (11th Cir. 1990) (Alabama school district was not an arm of the state).  "Whether a local school board is protected by Eleventh Amendment immunity, therefore, turns on the question of whether the board is properly classified as an arm of the State or as a municipal corporation or other political subdivision."  *Id.* at 1509.  Defendants have not argued, let alone established, that Sarran and MacGregor were acting as officials of an arm of the state. Absent any such indication, Defendants have not established entitlement to Eleventh Amendment immunity.  The motion to dismiss on those grounds is therefore due to be denied.[3]

Second, Sarran and MacGregor argue that the Third Amended Complaint fails to state a claim for intentional infliction of emotional distress ("IIED") by them against A.W. (Counts 23, 24). Doc. 85 at 6-10.  Counts 23 and 24 of the Third Amended Complaint allege that Sarran and MacGregor, in their individual capacity, intentionally and recklessly "fail[ed] to notify [A.W.] of referrals and police reports against John, [made] false accusations against her to Department of Children and

---

[3] Even if Sarran and MacGregor's employer could be considered an arm of the state, it is not clear that they would be protected by Eleventh Amendment immunity from the claims arising under the ADA and Section 504. *See Assoc. for Disabled Americans, Inc. v. Fla. Intern. U.*, 405 F.3d 954 (11th Cir. 2005) (Title II of the ADA validly abrogates states' Eleventh Amendment immunity in the context of a public education institution); 42 U.S.C. § 2000d-7; *see Garrett v. U. Ala. Birmingham Bd. of Trustees*, 344 F.3d 1288, 1293 (11th Cir. 2003) (states waive sovereign immunity for Rehabilitation Act claims by accepting federal funds).

Families, and plant[ed] a box cutter on John in retaliation for her complaints," causing A.W. severe emotional distress. Doc. 76 ¶¶ 227-233, 234-240.

Defendants assert that the alleged conduct does not rise to the level of extreme and outrageous, and the allegations do not establish that Sarran and MacGregor were involved in or aware of the alleged failure to notify A.W. of referrals and police reports. Doc. 85 at 7-9. With respect to the box cutter, they contend that an IIED claim does not lie when it is brought by someone who was neither the target of the conduct nor present when it occurred. *Id.* at 9. Plaintiffs respond that Sarran and MacGregor's course of conduct directed toward A.W.'s minor, disabled son was extreme and outrageous and foreseeably affected A.W. Doc. 105 at 8-9.

As the Court explained in its prior Order,

> To state a claim for IIED, Plaintiffs must plausibly allege: "(1) the defendant's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized society; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Knezevich v. Carter*, 805 F. App'x 717, 725 (11th Cir. 2020) (citations omitted).

Doc. 72 at 27.[4]

---

[4] The Court found that the prior complaint plausibly alleged that Sarran and MacGregor perpetuated extreme and outrageous conduct against Doe by committing multiple batteries against him while in a position of authority over him. *Id.* at 27-28. Because the complaint did not allege that A.W. experienced severe emotional distress, however, it did not state a claim against HCSD and Explorer with respect to IIED toward A.W. *Id.* at 28. Defendants do not move to dismiss the counts of the Third Amended Complaint that allege IIED by Sarran and MacGregor against Doe (counts 21 and 22).

When the alleged extreme and outrageous conduct is directed toward a third party, however, a plaintiff who seeks to recover for her own emotional distress must be physically present when the conduct occurs. *See Buchanan v. Miami-Dade Cnty.*, 400 So.3d 684, 686 (Fla. 3d DCA 2024), citing *M.M. v. M.P.S.*, 556 So.2d 1140, 1140-41 (Fla. 3d DCA 1989) (adopting the rule that an IIED claim may be brought by the target of the outrageous conduct or a close family member who was present at the time of the conduct).

The allegations of Counts 23 and 24 do not state a claim for IIED against A.W. The alleged planting of a box cutter on John, even if it was done in retaliation for A.W.'s complaints, is conduct that was directed toward John, not toward A.W.  And because A.W. does not allege that she was present at the time, she cannot recover for it. *See M.M.*, 556 So.2d at 1140-41.

The allegation that "Explorer administration also reported to the Department of Children and Families that A.W. had physically abused John, although there was no evidence of such abuse," is specifically targeted toward A.W. Doc. 76 ¶ 61.  But an act done by "Explorer administration" is not attributable to Sarran or MacGregor, absent an allegation (within, or incorporated into, those counts) that they were involved.

Likewise, although Counts 23 and 24 list "failing to notify A.W. of…police reports against John" among the conduct by Sarran and MacGregor that constitutes IIED, the TAC specifically alleges that it was "the Explorer administration" that made those reports without notifying A.W. *Id.* ¶ 60.  The "police reports" are attached to the

TAC; they are incident reports written by a school resource officer ("SRO") who was
employed by the Hernando County Sheriff's Office and assigned to Explorer K-8. Doc.
76-5. Sarran did not draft the reports and was not involved in any of the incidents that
led to the reports. *Id.* Although MacGregor was present during two of the incidents,
the reports of those incidents consist of the firsthand account of the SRO. Thus, to the
extent making and failing to notify A.W. of those reports qualifies as IIED, the exhibit
contradicts the allegation in Counts 23 and 24 that Sarran and MacGregor participated
in that conduct. *See*, *e.g.*, *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir.
2007) ("[W]hen exhibits contradict the general and conclusory allegations of the
pleading, the exhibits govern.") (citations omitted).

In any event, Sarran and MacGregor's alleged failure to notify A.W. about
those reports and disciplinary referrals against John does not rise to the level of extreme
and outrageous conduct. Outrageous conduct is a "particularly high" bar in Florida.
*Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1368 (11th Cir. 2024) (citations
omitted). This allegation simply does not rise to the level of conduct that is "beyond
all bounds of decency" such that it is "utterly intolerable in a civilized society." *See
Knezevich*, 805 F. App'x at 725. Accordingly, Counts 23 and 24 are due to be dismissed
in their entirety.

### C. HCSD and Explorer's Motion to Dismiss (Doc. 84)

### 1. Duplicative Counts and Naming the Incorrect Entity

First, Defendants point out that the TAC—and every previous pleading—
names HCSD as a defendant instead of the Hernando County School Board

("HCSB"). Doc. 84 at 4-6. In Florida, it is well-settled that "the governing body of each school district shall be a district school board," Fla. Stat. § 1001.40, and the district school boards are granted the power to sue and be sued. *Id.* § 1001.41(4). Accordingly, Defendants assert that the HCSB is the correct entity to sue, rather than HCSD or Explorer.

Plaintiffs—largely[5]—do not dispute that they named the wrong entity, but argue that it is a "technical issue" that does not affect the merits of their claims. Doc. 104 at 5-6. They request leave to amend in order to name HCSB, given Defendants' delay in raising the issue. *Id.* at 6.

Defendants are correct that Florida law necessitates suing the HCSB, not the HCSD. Fla. Stat. §§ 1001.40, 1001.41(4); *see, e.g.*, *Lee v. Pierre*, No. 9:19-cv-81631, 2020 WL 13847521, *3-4 (S.D. Fla. Jan. 28, 2020) (collecting cases, concluding "the School Board, rather than the School District, is the appropriate entity for purposes of Plaintiff's claims. Because the School District has no independent legal existence from the School Board, a suit against the School District is effectively a suit against the School Board.").

---

[5] Citing a Middle District of Georgia case which found that a school district was the proper defendant, Plaintiffs briefly assert that any "technical distinction" between the school board and school district is "misplaced." Doc. 104 at 5. But, of course, only cases that are governed by Florida law are relevant to this issue that arises under Florida law. And, despite Plaintiffs' assertion, their proposed Fourth Amended Complaint names the HCSB rather than the HCSD, although they do not disclose this change in their motion for leave to amend the complaint. *See* Doc. 116-4.

However, despite the Court's previous warning that a future dismissal may be with prejudice, the Court agrees with Plaintiffs that dismissal with prejudice is not appropriate where Defendant failed to raise this issue until their *second* motion to dismiss, more than a year after the case began. Therefore, the Court will permit Plaintiffs to file a Fourth Amended Complaint that names the HCSB instead of the HCSD in all counts against the HCSD that survive this Order. The Court will hereafter refer to the claims that will be converted into claims against HCSB as being against HCSB, rather than HCSD.

All counts against Explorer, however (Counts 8, 11, 14, 16, 18, 20, 32, 36, 40, 42), are due to be dismissed with prejudice, because they are duplicative of the claims against HCSD that will be converted into claims against HCSB. Under Fla. Stat. § 1001.41(4), HCSB, not the school, is the proper entity to answer Plaintiffs' claims. *See*, *e.g.*, *Doe v. Campbell Drive K-8 Center*, No. 24-23741-CIV, 2024 WL 5165882, *3 (S.D. Fla. Dec. 19, 2024) (dismissing all claims against school where school board was also sued).

Next, Defendants move to dismiss all counts against Sarran and MacGregor in their official capacity, because a suit against an individual in their official capacity is effectively a suit against the governmental entity whom the individual represents. Doc. 84 at 6-7. Defendants argue that these counts are duplicative of the claims against HCSB. *Id.*

The claims against Sarran and MacGregor in their official capacity arise under the ADA, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. In the context of § 1983, the Eleventh Circuit has held:

> Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond).

*Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991), citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). The *Busby* court affirmed the district court's decision to grant a directed verdict in favor of the individual defendants, because "[t]o keep both the City and the officer sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury." *Busby*, 931 F.3d at 776; *see also*, *e.g.*, *Harris by & through Davis v. Autry*, No. 20-13480, 2022 WL 392169, *6 (11th Cir. Feb. 9, 2022) (plaintiff's § 1983 claims against the school district were "functionally equivalent" to his § 1983 claims against a teacher's aide in his official capacity).

Likewise, an ADA claim brought against an individual in their official capacity is the functional equivalent of a suit against the agency itself. *See*, *e.g.*, *Henry v. Okeechobee Cnty. Sheriff's Office*, No. 21-12520, 2023 WL 239817, *5 (11th Cir. Jan. 18, 2023); *Stoddard v. Florida*, 509 F.Supp.2d 1117, 1123-24 (N.D. Fla. 2006); *Parker v. Univ. of Alabama Police Dep't*, No. 7:23-cv-01656, 2024 WL 5056624, *3 (N.D. Ala.

Dec. 10, 2024); *Horsley v. Univ. Ala.*, No. 2:13-cv-226, 2013 WL 12089495, *5 n.5 (N.D.
Ala. June 27, 2013).

Plaintiffs contend that Defendants' request for dismissal of all official capacity
claims is "overly broad and unjustified," and "should be limited to solely to any claims
that are clearly repeated and appear twice"; the subheading of Plaintiffs' argument on
this point argues the official capacity claims "are necessary to ensure complete relief
and accountability." Doc. 104 at 6-7.  However, Plaintiffs do not identify a distinction
between any of the official capacity claims and the corresponding HCSB claims, nor
explain why the official capacity claims are necessary to obtain complete relief.
Accordingly, the Court will grant Defendants' motion to dismiss, with prejudice, all
the claims against Sarran and MacGregor in their official capacity that have
corresponding claims against HCSB: 9, 12, 26, 27, 29, 30, 33, 34, 37, 38.[6]

The counts that were dismissed with prejudice in this section will not be
addressed further in this Order.

### 2.  Punitive Damages

Defendants also argue, and Plaintiffs concede, that Florida law prohibits
Plaintiffs' requests for punitive damages in the tort claims asserted against HCSB or
Sarran and MacGregor in their official capacities. Doc. 84 at 33-34; Doc. 104 at 33-
34.  Pursuant to Florida Statutes § 768.28(5), the requests for punitive damages in

---

[6] Counts 1 through 4, titled "disability discrimination: harassment," do not have a direct
analog that is asserted against HCSB.  These counts will be addressed separately in Section
II(C)(5), *infra*.

Counts 13, 15, 17, 19 are dismissed, with prejudice. The requests for punitive damages in the tort claims asserted against Sarran and MacGregor in their individual capacities (Counts 5, 6, 21, 22, 23, 24) remain.

In addition, Plaintiffs concede that punitive damages are prohibited for claims against municipalities under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). The requests for punitive damages in Counts 25 and 28 are therefore dismissed, with prejudice.

Plaintiffs also seek punitive damages in Counts 39 and 41, which allege disability discrimination under the ADA and Section 504 of the Rehabilitation Act. Defendants are correct that punitive damages are prohibited in these types of claims, too. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). The requests for punitive damages in Counts 39 and 41 are likewise dismissed, with prejudice.

### 3. Negligence Claims (Counts 13-20)

a. <u>Pre-Suit Notice Requirement</u>

Next, Defendants argue that the state law claims against them in Counts 13-20 fail because Plaintiffs have not demonstrated compliance with the pre-suit notice requirement set forth in Fla. Stat. § 768.28. Doc. 84 at 8-9. Under § 768.28,

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing.

*Id.* § 768.28(6)(a). These requirements are "conditions precedent to maintaining an action," *id.* § 768.28(6)(b), and "must be strictly construed." *Menendez v. N. Broward Hosp. Dist.*, 537 So.2d 89, 91 (Fla. 1988), quoting *Levine v. Dade Cnty. School Bd.*, 442 So.2d 210, 212 (Fla. 1983). Indeed,

> [N]ot only must the notice be given before a suit may be maintained, but also the complaint must contain an allegation of such notice[.] Where the time for such notice has expired, so that it is apparent that the plaintiff cannot fulfill the requirement, the trial court has no alternative but to dismiss the complaint with prejudice.

*Levine*, 442 So.2d at 213. However, when the time to provide § 768.28(a)(6) notice has not yet expired, the typical remedy is dismissal with leave to amend. *See, e.g., King v. Lee Cnty.*, No. 2:24-cv-375, 2025 WL 676224, *11 (M.D. Fla. March 3, 2025); *Rumler v. Dep't of Corr., Fla.*, 546 F.Supp.2d 1334, 1344 (M.D. Fla. 2008).

Here, the TAC does not allege that the pre-suit notice requirement has been satisfied. Nor does it generally allege that "all conditions precedent have been satisfied," which would be permissible under Fed. R. Civ. P. 8(a). *See, e.g., Smith v. Rainey*, 747 F.Supp.2d 1332, 1337 (M.D. Fla. Sept. 30, 2010). Thus, Plaintiffs have not complied with the strict requirements of § 768.28(6)(a), and the negligence claims in Counts 13-20 are due to be dismissed.

Plaintiffs do not dispute that the TAC lacks an allegation of compliance with the notice requirement. But they argue that they satisfied the notice requirement itself by "provid[ing] sufficient written notice of the alleged acts on multiple occasions," which they purport to attach to their response in opposition. Doc. 104 at 7-8. The only

document among the exhibits that could be construed as written notice contains two emails sent by A.W. to Explorer that recount the August 23, 2022 incident. Doc. 104-1. Although the emails contain a detailed description of Doe's allegations of that incident, they do not "strictly comply" with § 768.28's requirement to notify the agency that the plaintiff planned to file a claim against it or demand compensation for the injuries. *See*, *e.g.*, *Staly v. Izotova*, 403 So.3d 1034, 1037 (Fla. 5th DCA 2024), citing *Wilson v. City of Tampa*, 209 So. 3d 646, 649 (Fla. 2d DCA 2017); *Smart v. Monge*, 667 So. 2d 957, 959 (Fla. 2d DCA 1996); *see also Sara Vargas v. Indian River Cnty. Sheriff's Office*, No. 24-cv-14402, 2025 WL 745974, *2 (S.D. Fla. Jan. 22, 2025) ("Plaintiff vaguely alleges that she filed a 'complaint with Internal Affairs,' but the Court finds this allegation insufficient to satisfy § 768.28(6)(a)."), *report and recommendation adopted by* 2025 WL 470168 (Feb. 12, 2025). Therefore, Plaintiffs have not established that they complied with the requirement to give notice, let alone the requirement to allege their compliance in the complaint.

Nonetheless, the Court observes that Plaintiffs are still within the statutory period to provide § 768.28(6)(a) notice. Therefore, these claims will be dismissed without prejudice. To the extent Plaintiffs intend to pursue their negligence claims, they must strictly comply with all requirements of § 768.28(6)(a) and provide detailed allegations regarding their compliance in the Fourth Amended Complaint.

b. <u>Failure to State a Claim</u>

Defendants also move for dismissal on the merits with respect to Counts 17 and 19, which allege that HCSB is vicariously liable for negligence committed by Sarran and MacGregor against Doe and A.W., respectively. Doc. 84 at 29-33. [7]

Count 17 alleges Sarran and MacGregor were negligent by failing to implement HCSD policies that "required for progressive discipline and did not permit physical abuse," when they "hit [Doe] with a stick in his head and neck region, pinned him to the ground, twisted his limbs and planted a box cutter on his person," resulting in physical and emotional injuries. Doc. 76 ¶¶ 187-188, 190.

Defendants argue, *inter alia*, that Count 17 does not state a claim for negligence because it alleges that Sarran and MacGregor committed intentional torts, rather than negligent acts. Doc. 84 at 31-32. Plaintiffs argue in response that their allegations "are broader" in that they allege that "Sarran and MacGregor acted negligently in the context of their duties, which allowed these intentional acts to occur," because "the failure to supervise, investigate, or adhere to required policies created an environment where intentional misconduct could thrive." Doc. 104 at 30. Plaintiffs' arguments stand in contrast to the actual allegations contained in Count 17, which plainly allege intentional torts as the conduct underlying Sarran and MacGregor's negligence. [8]

---

[7] Although Defendants refer to Counts 13-20 in the subheading of this section, Doc. 84 at 29, their arguments address only Counts 17-20. Thus, the Court will not analyze the claims of direct liability for negligence in Counts 13 and 15.

[8] Plaintiffs also assert that Defendants' arguments contradict the Court's prior Order, which found that the allegations stated a claim for vicarious liability. Doc. 104 at 30. However, the

Defendants are correct that Florida law does not recognize a claim of negligence
for the commission of an intentional tort.  Florida courts have long held that "[a]n
assault and battery is not negligence for such action is intentional, while negligence
connotes an unintentional act." *McDonald v. Ford*, 223 So.2d 553, 555 (Fla. 2d DCA
1969) (affirming directed verdict for defendant where plaintiff sued on a negligence
theory but alleged a battery) (quotation omitted).  The Eleventh Circuit, interpreting
Florida law, has described it as "inapposite to allege the negligent commission of an
intentional tort, such as the use of excessive force." *Lewis v. City of West Palm Beach,
Fla.*, 561 F.3d 1288, 1294 (11th Cir. 2009); *see also*, *e.g.*, *Garcia v. Carnival Corp.*, 838
F.Supp.2d 1334, 1337 (S.D. Fla. 2012) ("Count I is improper to the extent that Count
I attempts to state a negligence cause of action against Defendant for the commission
of intentional torts, and is therefore dismissed with prejudice."); *City of Miami v.
Sanders*, 672 So.2d 46, 47-48 (Fla. 3d DCA 1996) (because a negligence claim "requires
only the showing of a failure to use due care and does not contain the element of
intent…it is not possible to have a cause of action for 'negligent' use of excessive force
because there is no such thing as the 'negligent' commission of an 'intentional' tort."); 
*Essex Ins. Co. v. Big Top of Tampa, Inc.*, 53 So.2d 1220, 1223 (Fla. 2d DCA 2011) (same,
citing *Sanders*).  Here, the acts alleged in Count 17 are intentional torts that cannot

---

prior Order found that the previous iteration of the negligence claim failed to identify any
specific actions by Sarran, MacGregor, or other employees that breached the duty of care
owed to students. Doc. 72 at 23-24.  Therefore, the Court did not make a finding as to whether
the specific acts could constitute negligence.

form the basis of a negligence claim. Accordingly, Count 17 does not state a claim and is due to be dismissed with prejudice.

Count 19 alleges that HCSB is vicariously liable for Sarran and MacGregor's negligence against A.W. Doc. 76 ¶¶ 200-205. Specifically, it alleges that Sarran and MacGregor were negligent by failing to implement HCSD policies requiring "investigations of physical abuse by a parent and other disciplinary documents to be reviewed and signed by a parent," "fail[ing] to investigate allegations of abuse, [writing Doe] referrals without knowledge or consent by A.W., fil[ing] police reports against [Doe] without knowledge or consent, and [making] false allegations against A.W. in direct violation of HCSD policy." *Id.* ¶¶ 201-202.

Defendants argue that neither Count 17 nor Count 19 allege a cognizable duty that Sarran or MacGregor breached, because internal policies do not create a substantive duty to comply. Doc. 84 at 30-31. Plaintiffs do not dispute that the internal policies do not create a duty. Doc. 104 at 29 ("Plaintiffs do not rely on the policies themselves to establish a legal duty."). Instead, they assert that "Defendants' failure to implement required policies…constitutes negligence because there was a clear duty to act in accordance with these established standards." *Id.* Specifically, the "policies were established to protect students, and the "failure to adhere to them created foreseeable harm"—and "specific harm to A.W." *Id.* at 31. "The duty to protect students exists independently of the policies, and the failure to comply with those standards evidences negligence." *Id.*

Although Plaintiffs' arguments emphasize Defendants' duty to protect students, Count 19 alleges harm against A.W., rather than Doe.  The Court is unaware of, nor have Plaintiffs identified, any caselaw that establishes a duty owed toward a parent rather than a student. *Cf. Limones v. School Dist. of Lee Cnty.*, 161 So.3d 384, 390 (Fla. 2015) (schools have a special duty of care toward their students).  To the extent Count 19 alleges negligence based on a failure to comply with policies established to protect students, it does not plausibly allege a breach of a duty owed to A.W.

Count 19 also includes the allegation that Sarran and MacGregor "made false accusations against A.W. in direct violation of HCSD policy." Doc. 76 ¶ 202. Although this allegation appears to refer to an unidentified policy that would protect parents rather than students, it is not clear what duty Plaintiffs allege A.W. breached— in light of Plaintiffs' concession that the internal policies themselves do not create a duty.  Further, like Count 17, this allegation describes an intentional act, not a negligent one. *See id.* ¶¶ 58, 61 (alleging that Defendants made the false accusation in retaliation for A.W.'s complaints).  Therefore, Count 19 does not state a claim for negligence.

Both Counts 17 and 19 will be dismissed with prejudice.  As discussed *supra*, Counts 13 and 15 will be dismissed without prejudice for failure to comply with § 768.28(6)(a).

### 4. § 1983 Claims

a. Substantive Due Process (Count 25)

Count 25 asserts *Monell* liability against HCSB for Sarran and MacGregor's alleged physical abuse of Doe on multiple occasions, violating his right to substantive due process. Doc. 76 ¶¶ 244-45. Sarran and MacGregor acted pursuant to HCSB's "longstanding practice and custom" to allow their staff to disregard official HCSB policies that "required for progressive discipline and did not permit physical abuse of the nature in which it was applied" against Doe. *Id.* ¶ 246. The TAC also alleges that Sarran and MacGregor "had substantial supervisory authority," such that their actions "constitute an official decision." *Id.* ¶¶ 21-22. Sarran "was specifically responsible for…discipline for special education students," while MacGregor was "responsible for the supervision of teachers, students, and other HCSD and Explorer employees[.]" *Id.*

Municipalities, including school boards, will be held liable under § 1983 only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Svcs. of City of New York*, 436 U.S. 658, 691 (1978). Although municipal liability cannot be based solely on a theory of *respondeat superior*, a municipality may be liable for an act by a subordinate employee under *Monell* if the act was done in accordance with official policy. *Id.* at 692-94. *Monell* liability may also be based on "(1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so

pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994).

Defendants argue that Count 25 fails to establish *Monell* liability because the TAC does not allege the existence of any other incidents besides Plaintiffs' own allegations, and therefore does not adequately allege a custom or policy. Doc. 84 at 23-24. Defendants also challenge any theory that Sarran and MacGregor were final policymakers, given that Florida law vests final policymaking authority in the school board. *Id.* at 25.

In response, Plaintiffs first assert that they plausibly alleged *Monell* liability because Defendants *violated* official school policies requiring progressive discipline and parental notification. Doc. 104 at 20-21. However, this argument is not an accurate description of *Monell* liability based on an official policy. *See Monell*, 436 U.S. at 691. It will not be considered or addressed further.

Plaintiffs also argue that the TAC's allegations that the violations of school policy were repeated are adequate, at the pleading stage, to establish an unofficial custom or practice. *Id.* at 21-22. In addition, Plaintiffs contend it is plausible that MacGregor had final policymaking authority, as Defendants identified him as their corporate representative and he was responsible for the decision regarding Doe's suspension. *Id.* at 23.

With respect to MacGregor's alleged policymaking authority, the TAC does not plausibly allege that he—or Sarran—was a final policymaker with respect to the physical abuse that is alleged in Count 25. Plaintiffs allege that the physical abuse of

24

Doe occurred in the context of discipline or corporal punishment. *See* Doc. 76 ¶¶ 34-
43, 56, 244.  To lead to municipal liability under § 1983, "the challenged action must
have been taken pursuant to a policy adopted by the official or officials responsible for
making policy in that particular area of the [municipality]'s business, as determined by
state law." *Martinez v. City of Opa-Locka*, 971 F.2d 708, 713 (11th Cir. 1992).  Florida
law vests policymaking authority for student discipline in the district school board. *See*
Fla. Stat. §§ 1006.07(1)(a) (school board must "[a]dopt rules for the control, discipline
[and] suspension…of students"; it "may prohibit the use of corporal punishment, if
the district school board adopts or has adopted a written program of alternative control
or discipline."), 1006.07(2) (school board must "[a]dopt a code of student conduct"
that includes "[c]onsistent policies and specific grounds for disciplinary action" and
"procedures to be followed for acts requiring discipline, including corporal
punishment.").  Neither Sarran nor MacGregor, then, have final policymaking
authority with respect to student discipline in the HCSD. *See Chabad Chayil, Inc. v.
School Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1229-31 (11th Cir. 2022) (affirming
dismissal of *Monell* claim after finding that Florida law vests final policymaking
authority in the school board, not in the superintendent who took the challenged
action).  Accordingly, the TAC does not plausibly allege *Monell* liability based on a
final policymaker theory.

    With respect to Plaintiffs' alternative argument that the TAC alleges a theory of
municipal liability based on an unofficial custom or practice, the parties primarily
dispute whether allegations of additional incidents involving other individuals are

necessary to plausibly allege this theory, or whether repeated incidents involving the same plaintiffs are sufficient. *Compare* Doc. 84 at 23 *with* Doc. 104 at 21.

The theory of municipal liability based on an unofficial custom or practice requires a plaintiff to establish "a widespread practice that…is so permanent and well settled as to constitute a custom or usage with the force of law… In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 2001) (quotations omitted). A single incident is not enough to demonstrate a widespread practice, even if that incident "involved several employees of a municipality and an extended period of time." *See Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011), citing *McDowell v. Brown*, 392 F.3d 1283, 1286-91 (11th Cir. 2004); *see also Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("[R]andom acts or isolated incidents are insufficient to establish a custom or policy."). Moreover, conclusory allegations that other incidents occurred are insufficient to plausibly allege the existence of a custom. In *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1370 (11th Cir. 2024), for example, the court affirmed the dismissal of a complaint that "alleged in conclusory fashion that the county 'had a county wide custom of shooting…dogs.'" The court noted that the complaint lacked details about the circumstances of past incidents from which to plausibly infer that they were similar to the plaintiff's allegations, such as "whether the dogs in question posed an imminent threat." *Id.* Such conclusory allegations were

insufficient to survive the *Iqbal* pleading standard. *Id.*, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have permitted a § 1983 claim to proceed past the pleading stage when the alleged custom or practice was solely based on incidents involving the same plaintiff. In *Brown v. City of Fort Lauderdale*, 923 F.2d at 1481, the district court was found to have erred in dismissing the complaint of a *pro se* plaintiff who alleged that "his experiences were the result of discriminatory practices accepted by the police department" and the police chief's "knowledge of, and acquiescence in, those practices." However, *Brown* was decided under the now-overruled *Conley* standard of pleading, which required an appellate court to reverse a dismissal unless it appeared "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 1475, quoting *Conley v. Gibson*, 355 U.S. 41 (1957). Relying on *Brown*, at least two district courts have permitted a complaint to proceed on a custom or practice theory where the plaintiff pointed only to instances that happened to him personally. *See Sharp v. City of Montgomery*, No. 2:19-cv-857, 2021 WL 5989104, *4 (M.D. Ala. Dec. 17, 2021) (plaintiff's municipal liability claim "just barely" pleaded an unofficial policy where it contained detailed allegations of three prior instances in which the plaintiff was passed over for promotions in favor of less qualified white applicants); *see also Webb v. City of Venice*, No. 8:19-cv-3045, 2020 WL 4785073, *2-3 (M.D. Fla. Aug. 18, 2020).

Here, the complaint describes a single incident of excessive disciplinary force on August 11, 2022, in detail, and then generally alleges that Sarran and MacGregor

used physical force against Doe "on multiple occasions" in addition to the August 11 incident. Doc. 76 ¶¶ 24-43, 55-56, 244.  This vague reference to additional incidents does not provide enough detail about those incidents from which to plausibly infer that they were similar to the August 11 incident or that they constituted a substantive due process violation. *See Plowright*, 102 F.3d at 1370; *cf. Sharp*, 2021 WL 5989104 at *4. Therefore, even if a *Monell* custom or practice may be established solely based on incidents involving the same plaintiff, the TAC does not plausibly allege the existence of a custom or practice of excessive disciplinary force.  The *Monell* claim is due to be dismissed.

Even if the TAC plausibly alleged a theory of *Monell* liability, it would not state a claim under § 1983 for a substantive due process violation based on excessive corporal punishment.  After all, "[w]ithout an underlying constitutional violation, we need not consider whether the school district had a policy or custom that caused one." *A.W. by and through J.W. v. Coweta Cnty. School Dist.*, 110 F.4th 1309, 1317 (11th Cir. 2024).  Public school employees' excessive corporal punishment toward students will be found to violate substantive due process "only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Id.* at 1316.  The shock-the-conscience standard is extremely difficult to surpass, as "only the most egregious official conduct" is found to shock the conscience. *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020).  In *T.W. ex rel. Wilson v. School Bd. Of Seminole Cnty.*, 610 F.3d 588, 598-603 (11th Cir. 2010), evidence that a special education teacher verbally and physically abused a disabled student with no disciplinary purpose,

including by using excessive and inappropriate force to restrain him, twisting his arms behind his back, pinning him against things with her body, tackling him to the ground, and tripping him with her foot, did not shock the conscience. *See also A.W.*, 110 F.4th at 1309 (affirming dismissal of complaint alleging that special education teacher threw a shoe at a disabled student, hitting her in the face, and spanked and locked another disabled student in the bathroom); *Peterson v. Baker*, 504 F.3d 1331, 1337 (11th Cir. 2007) (choking a student until he lost his breath and sustained blue and red bruises and a scratch on his neck was not obviously excessive and did not shock the conscience); *cf. Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000) (allegation that coach struck student in the eye with a metal weight lock, resulting in permanent destruction of his eye, stated claim for violation of substantive due process). Here, while Plaintiffs' allegations that Sarran and MacGregor struck Doe with a stick, twisted his ear, and pinned him to the ground on multiple occasions are undoubtedly serious, they do not rise to the extreme level necessary to state a claim for a substantive due process violation. Accordingly, Count 25 is due to be dismissed with prejudice.

    b.  <u>Procedural Due Process (Count 28)</u>

Count 28 alleges that HCSB is liable under § 1983 for Sarran and MacGregor's alleged procedural due process violations, which occurred when they failed to investigate his claims of harassment, wrote referrals and police reports against him without following school protocol, forced him to sign documents without notice to A.W. or her presence, planted a box cutter on him, and suspended him without a proper hearing. Doc. 76 ¶¶ 269-70. Plaintiffs allege that Sarran and MacGregor acted

pursuant to a longstanding practice and custom of the HCSB that allowed Explorer staff to disregard sections of the HCSD policy manual, such as those requiring the use of progressive discipline, a parent signature for disciplinary documents, and investigation of allegations of parental abuse. *Id.* ¶¶ 187, 201, 272.

Defendants argue that Count 28 fails to state a claim for a procedural due process violation, and that it also fails to plausibly allege *Monell* liability for the same reasons as Count 25. Doc. 84 at 26-29.  Plaintiffs, too, repeat the *Monell* arguments they raised for Count 28. Doc. 104 at 27-28.

The Court agrees with Defendants that Count 28 fails to state a claim for *Monell* liability.  First, to the extent Plaintiffs rely on a final policymaker theory of *Monell* liability for Count 28, *see* Doc. 104 at 28, this theory fails for the same reason as Count 25.  MacGregor cannot be considered a final policymaker with respect to HCSB's policies regarding student discipline in light of Florida law that vests such authority in the HCSB. *See* Section II(C)(4)(a).

Likewise, the TAC fails to establish the existence of a custom or practice that is "so pervasive…as to be the functional equivalent of a policy adopted by" the HCSB. *Church*, 30 F.3d at 1343.  It contains no allegations of other incidents—involving Doe or any other student—in which HCSB failed to investigate claims of harassment, failed to follow school protocol for disciplinary reports, or suspended a student without a proper hearing or for a fabricated reason. *See* Doc. 76 ¶ 269.  And the various school policies that Plaintiffs allege Sarran and MacGregor did not follow in Doe's case are far too different from each other to support a finding that there is an unofficial HCSB

30

policy or custom to fail to comply with school policies.  For the reasons described in
Section II(C)(4)(a), then, the TAC fails to plausibly allege *Monell* liability for Count
28.  Accordingly, the Court need not reach the merits of Plaintiffs' procedural due
process claim.  Count 28 is due to be dismissed with prejudice.

### 5.  ADA and Section 504 Claims

The last category of claims in the TAC are asserted under the ADA and Section
504 of the Rehabilitation Act ("RA").  Defendants make separate challenges to the
two types of relief sought in these counts—equitable relief and compensatory
damages—and also argue that the allegations fail to state a claim for relief.

Defendants also, briefly, argue that Counts 1 and 2 commingle ADA and RA
claims. Doc. 84 at 10.  Although they are titled "ADA," each count references a
"violation of Section 504." Doc. 76 ¶¶ 80, 87.  In response, Plaintiffs point out that the
claims are often analyzed together due to their overlapping protections. Doc. 104 at
10.  Despite the references to Section 504, the Court understands Counts 1 and 2 to be
asserted exclusively under the ADA, while Counts 3 and 4 are the corresponding
claims under the RA.  The TAC has followed the prior Order's direction to separate
each separate claim into a different count.  The Court therefore declines to dismiss
Counts 1 and 2 as commingled.

Because claims under the ADA and RA are construed "interchangeably," with
"the same standards govern[ing] discrimination claims under both statutes," *Allmond
v. Akal Sec., Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009), the Court will discuss the

corresponding ADA and RA counts together in the ensuing discussion.   The

remaining ADA and RA counts are as follows (ADA/RA):

> 1/3: Disability Discrimination – Harassment against MacGregor
> 2/4: Disability Discrimination – Harassment against Sarran
> 7/10: Disability Discrimination against HCSB
> 31/35: Retaliation against HCSB
> 39/41: Disability Discrimination – Failure to Prevent against HCSB.

### a.  Equitable Relief

First, Defendants move to dismiss the requests for injunctive relief in Counts 1

through 4 for failure to exhaust administrative remedies under IDEA.  As the Court

stated in its prior Order, Plaintiffs are required to show that they have exhausted

administrative remedies under IDEA before seeking injunctive relief. *See* Doc. 72 at

12, citing *Fry v. Napoleon Cmty. School*, 580 U.S. 154, 165 (2017) and *School Comm. Of

Burlington v. Dep't of Educ., Mass.*, 471 U.S. 359 (1985).  Exhaustion of administrative

remedies is not required where it would be futile. *N.B. by D.G. v. Alachua Cnty. School

Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996) (abrogated on other grounds by *Luna Perez v.

Sturgis Public Schools*, 598 U.S. 142 (2023)); *see, e.g.*, *L.M.P. ex rel. E.P. v. School Bd. of

Broward Cnty., Fla.*, 516 F.Supp.2d 1294, 1305 (S.D. Fla. 2007) (parents were not

required to exhaust administrative remedies where complaint alleged that school

board had a policy of automatically denying all requests of the type parents would

have made). The burden of demonstrating futility is on the person seeking exemption

from the exhaustion requirement. *Honig v. Doe*, 484 U.S. 305, 327 (1988).

The TAC alleges that exhaustion would have been futile, because "Plaintiffs

engaged in the administrative process by attending a hearing and sending a letter to

HCSD, notifying them of all alleged acts," yet "Defendants ignored A.W.'s complaints[.]" Doc. 76 ¶ 16.  Although "Plaintiffs made every effort to exhaust administrative procedures," they "had no authority to schedule or initiate administrative hearings." *Id.*

Notably lacking from the TAC is any allegation that Plaintiffs followed the administrative procedures for requesting an IDEA hearing.  Rather, Plaintiffs have added the same factual allegations that the Court addressed—and found inadequate— in its prior Order.  The prior Order indicated that "the fact that Explorer and HCSD staff were not responsive to A.W.'s complaints does not indicate that she could not have received relief from an administrative law judge through the IDEA administrative process." Doc. 72 at 14.

Like the Second Amended Complaint, the TAC fails to establish the futility exception to the exhaustion requirement.  "To show futility, a plaintiff must demonstrate that…the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." *Coleman v. Newburgh Enlarged City School Dist.*, 503 F.3d 198, 205 (2d Cir. 2007) (citations omitted).  In *Jenkins v. Butts Cnty. School Dist.*, 984 F. Supp. 2d 1368, 1380 (M.D. Ga. 2013), for example, the futility exception was found to apply where the plaintiff filed a due process complaint in accordance with IDEA procedures, *see* 20 U.S.C. §§ 1415(b)(6), (7), (8), but never received a due process hearing on the merits of her claims, and her attempt to amend the due process complaint to assert new claims was denied.  Thus, it was futile for her to exhaust the new claims she had already attempted to assert.  *Id.*

Allegations of parents' informal efforts to resolve the problem that fall short of filing a due process complaint are rarely sufficient to demonstrate futility. In *Rivera-Quinones v. Dep't of Educ. of Puerto Rico*, 102 F. Supp. 3d 381, 386-87 (D.P.R. 2015), the futility exception did not apply where parents alleged they "complain[ed]" for years to the school board and department of education about the deficiencies alleged in the complaint, but the agencies failed to correct them. The court found that the defendant's "pattern of ignoring informal complaints does not necessarily mean that lodging a formal administrative complaint would have been futile." *Id.* On the other hand, in *Muskrat v. Deer Creek Pub. Schools*, 715 F.3d 775, 786 (10th Cir. 2013), futility was established where, although the plaintiffs "did not formally request a due process hearing under the IDEA, they nonetheless worked through administrative channels to obtain the relief they sought," by "written and oral demands to school administrators[.]" The Eighth Circuit distinguished *Muskrat* in *J.M. v. Francis Howell School Dist.*, 850 F.3d 944, 951 (8th Cir. 2017), when it concluded that allegations of parents' informal efforts in *J.M.* did not establish futility. Unlike the parents in *Muskrat*, the parent in *J.M.* "allege[d] only that she 'contacted school district officials to have the isolation immediately stopped,'" but did not allege that she "sought to address her concerns…through the IEP process or modified J.M.'s IEP to reflect those concerns[.]" *Id.*

Here, Plaintiffs' allegations about futility are more akin to *J.M.* and *Rivera-Quinones* than *Muskrat* or *Jenkins*. Although A.W. sent an informal complaint to

Explorer, Doc. 104-1, and raised the issue at a meeting regarding truancy, Doc. 104-2, she does not allege that she attempted to follow the formal IDEA procedures or undertook any efforts that were reasonably equivalent to following those procedures. Accordingly, because the TAC does not establish futility, the requests for injunctive relief in Counts 1 to 4 are dismissed with prejudice.

Plaintiffs also seek, without specification, "equitable monetary relief," in each of the ADA and RA counts. Their response in opposition does not provide an explanation of the type of equitable monetary relief they seek, and the Court will not speculate on what the term refers to. To the extent the TAC's references to "equitable monetary relief" refer to relief that is available under IDEA, including, but not limited to, reimbursement for alternative education, *see Forest Grove School Dist. v. T.A.*, 557 U.S. 230 (2009), those requests are also dismissed with prejudice for lack of exhaustion.

### b. Failure to State a Claim / Compensatory Damages

Each of the ADA and RA counts also seeks compensatory damages. Exhaustion of administrative remedies under IDEA is not required for this form of relief, because it is not available under IDEA. *See* Doc. 72 at 12. However, where a plaintiff seeks compensatory damages, he or she must allege that the defendants engaged in "intentional discrimination," which requires a showing of the defendants' "deliberate indifference." *Id.*, citing *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). Defendants challenge the sufficiency of the TAC's allegations regarding deliberate indifference. Doc. 84 at 19-21.

Defendants also argue that the causes of action Plaintiffs assert under the umbrella of disability discrimination—disability harassment, disability discrimination, and failure to prevent disability discrimination—do not state a claim. Doc. 84 at 9-10. Because the sufficiency of the disability discrimination allegations is closely tied to the sufficiency of the allegations with respect to deliberate indifference, the Court will discuss the two topics together with respect to each type of claim.

>            i.        *Disability Harassment (Counts 1 through 4)*

First, as the Court observed in the prior Order, it is unclear that a cause of action for harassment exists in the context of discriminatory acts by a teacher or school administrator, rather than peer-on-peer harassment. *See* Doc. 72 at 15.    Despite disagreeing with Defendants' argument that the cause of action does not exist in this context, Plaintiffs offer no supporting authority demonstrating that it does. Doc. 104 at 9-10.

To the extent a cause of action for disability discrimination in the form of harassment exists in this context, both parties suggest that it would follow the framework for peer-on-peer harassment in Title IX cases. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (addressing Title IX liability for peer-on-peer sexual harassment); *Long v. Murray Cnty. School Dist.*, No. 4:10-cv-15, 2012 WL 2277836, *25 (N.D. Ga. May 12, 2012) (collecting cases, applying Title IX framework to ADA peer-on-peer disability harassment claims).    To state a claim for peer-on-peer disability harassment, a plaintiff must plausibly allege:

> (1) the plaintiff is an individual with a disability, (2) he or she was harassed based on that disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment, (4) the defendant knew about the harassment, and (5) the defendant was deliberately indifferent to the harassment.

*Id.* at *26 (citation omitted).

Counts 1 through 4 allege that Sarran and MacGregor discriminated against Doe by committing battery against him, forcing him to sign documents without his mother's consent, and planting a box cutter in his book bag; they specifically targeted Doe because they knew he had a disability that limited his ability to communicate. *See* Doc. 76 ¶¶ 76-99. As a result of their conduct and discrimination, Doe was excluded from participation in a public entity's services, programs, or activities, and denied educational opportunities and benefits. *Id.*

Defendants argue that the counts fail to allege that Sarran and MacGregor were deliberately indifferent to the harassment, because the counts allege that they were the alleged harassers. Doc. 84 at 11. Plaintiffs respond that "the Complaint alleges" that Sarran and MacGregor were each deliberately indifferent to the other's harassment of Doe. Doc. 104 at 10-11. But the Complaint does not include such an allegation. The allegations of Counts 1 through 4 refer only to conduct by either Sarran or MacGregor, but not both. Similarly, Plaintiffs claim in their response that "the Complaint alleges that other individuals at the school also engaged in harassing behavior toward John Doe, and that both Sarran and MacGregor were aware of this harassment but failed to take any corrective action." *Id.* at 11. But, again, neither Counts 1 through 4 nor

the factual allegations that those counts incorporate contain this allegation.  Thus, even if a *Davis*-style claim of disability harassment is available in this context, Plaintiffs have failed to adequately allege it.  Counts 1 through 4 are therefore due to be dismissed, with prejudice.

### ii.    *Failure to Prevent Disability Discrimination (Counts 39/41)*

It is also unclear that a cause of action for failure to prevent discrimination exists in this context, *see* Doc. 72 at 15, and Plaintiffs, again, offer no supporting authority. Unlike Counts 1 through 4, neither party suggests a legal framework that would govern this type of claim.  Notwithstanding the label of "failure to prevent," however, the Court finds that the allegations of Counts 39/41 state a claim for intentional disability discrimination that warrants compensatory damages.

Counts 39/41 allege that HCSB intentionally discriminated against Doe and demonstrated deliberate indifference toward his safety by allowing him to be physically abused, knowing that he would be unable to communicate their actions because of his disability. Doc. 76 ¶¶ 364-371.  HCSB exhibited deliberate indifference by failing to properly investigate the abuse or formally notify parents, failing to provide counseling services to Doe, and failing to change its policies and procedures to ensure that students were no longer subject to the same type of conduct. *Id.*  Additionally, Sarran and MacGregor failed to prevent further discrimination against Doe despite having substantial supervisory authority over him. *Id.*  As a result, Doe was denied educational opportunities and benefits. *Id.*

To state a claim for disability discrimination under Section 504 and the ADA, a plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of [his] disability." *Ingram v. Kubik*, 30 F.4th 1241, 1256-57 (11th Cir. 2022) (quotation omitted). Here, the allegations that HCSB denied Doe educational benefits by allowing him to be physically abused because of his disability are sufficient to allege disability discrimination.

Moreover, Counts 39/41 adequately allege HCSB's deliberate indifference. The plaintiff must make a showing of deliberate indifference to hold a school board or other public body liable for intentional discrimination, and therefore compensatory damages. *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334 , 344-45 (11th Cir. 2012). A defendant acts with deliberate indifference if it knew that harm to a federally protected right was substantially likely and made the deliberate choice to fail to act on that likelihood. *Id.* (quotations and modifications omitted). Moreover, the individual who acts with deliberate indifference must be "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the organization's behalf and who has actual knowledge of discrimination in the organization's programs and fails adequately to respond." *Id.* (quotations omitted, modifications accepted). Such an official must have "substantial supervisory authority," such that her actions "constitute an official decision by the entity itself not

to remedy the misconduct." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1135 (11th Cir. 2019) (quotations omitted).

In the prior Order, the Court found that MacGregor likely qualified as an official with substantial supervisory authority, by virtue of his position as an assistant principal and his actual knowledge of the alleged discrimination. Doc. 72 at 19-20; *see J.S. through J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 988-90 (11th Cir. 2017). In addition, the TAC plausibly alleges that A.W. made verbal and written complaints to Explorer about the alleged abuse, which was also the subject of a meeting between A.W. and the Explorer administration. Doc. 76 ¶¶ 50-52, 58, 63, 70; *see also* Doc. 76-5 at 7 (SRO's incident report containing A.W.'s statement that Explorer staff have physically abused Doe).  In all, reading the TAC in the light most favorable to Plaintiffs, the Court finds that it adequately alleges that HCSB officials knew that harm to a federally protected right was substantially likely and deliberately failed to act. Accordingly, Counts 39/41 state a claim for disability discrimination and compensatory damages.

### iii.    *Disability Discrimination (Counts 7/10)*

Counts 7/10 allege that HCSB discriminated against Doe on the basis of his disability by "failing to provide [his] IEP to Explorer, failing to provide [him] with accommodations, forcing [him] to sign documents without his mother's consent and allowing [him] to be suspend[ed] without a proper hearing." Doc. 76 ¶ 120-125.  Like the other ADA/RA counts, Counts 7/10 allege that these acts denied Doe the benefits

of HCSB's services and were taken because of his disability, which HCSB knew limited Doe's ability to clearly communicate feelings, emotions, and events. *Id.*

Defendants challenge the element of causation, arguing that the allegations do not plausibly allege that these actions were taken because of his disability—particularly as other allegations claim Defendants took action to retaliate against Plaintiffs. Doc. 84 at 12-15. At this stage, however, viewing the allegations in the light most favorable to Plaintiffs, the Court finds that they are adequate to plausibly allege disability discrimination. It is plausible that HCSB took at least some of the identified actions because of Doe's disability, believing that he was an easy target due to his difficulty communicating. *See* Doc. 76 ¶ 46; *see also* ¶ 32. And, contrary to Defendants' argument, the TAC identifies a specific accommodation that Sarran allegedly denied because she was not informed about his IEP. *Id.* ¶¶ 34-36; *cf.* Doc. 84 at 15.

Moreover, the TAC plausibly alleges deliberate indifference with respect to some of the allegedly discriminatory acts: forcing him to sign disciplinary referrals without his mother's consent and allowing him to be suspended without a proper hearing.[9] The exhibits attached to the TAC demonstrate that MacGregor wrote the referrals and was involved in the box cutter incident. Doc. 76-4; Doc. 76-5 at 4. The

---

[9] Defendants challenge the allegation that Doe was suspended without a proper hearing, because a one-day suspension does not require a hearing. Doc. 84 at 14. However, the Court understands the TAC to allege that Defendants suspended Doe without holding an IEP meeting or manifestation hearing to determine whether the alleged behavior was the result of his documented disabilities. Doc. 76 ¶¶ 62, 69. Whether that type of meeting or action was, in fact, required is beyond the scope of the parties' briefing and may be addressed at summary judgment or trial.

Court has already found that the TAC plausibly alleges that MacGregor is an official for deliberate indifference purposes. Again, at this stage, the allegations are sufficient to support a request for compensatory damages with respect to those alleged acts.

However, the Court agrees with Defendants that Counts 7/10 do not plausibly allege deliberate indifference with respect to HCSB's alleged failure to provide Doe's IEP to Explorer, which allegedly rendered the other Defendants unable to provide accommodations. The TAC does not allege that HCSB or any of its officials acted deliberately with respect to Doe's IEP, such that the failure to provide it could be considered intentional discrimination, rather than negligence. Accordingly, to the extent Counts 7/10 are based on HCSB's alleged failure to provide Doe's IEP to Explorer, and their failure to provide accommodations as a result, Plaintiffs cannot receive compensatory damages.

### D. Conclusion

In sum, Defendants' motions to dismiss are due to be granted-in-part, to the extent that the following counts are dismissed with prejudice: 1, 2, 3, 4, 8, 9, 11, 12, 14, 16, 17, 18, 19, 20, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 36, 37, 38, 40, 42. The requests for punitive damages in the following counts are dismissed with prejudice: 13, 15, 39, 41. To the extent the following counts seek equitable relief that is available under IDEA, those requests are dismissed with prejudice: 7, 10, 31, 35, 39, 41. Finally, the request for compensatory damages in Counts 7 and 10 is dismissed to the extent that the claims are based on the failure to provide Doe's IEP to Explorer staff or provide accommodations to Doe.

Counts 13 and 15 are dismissed without prejudice. To the extent Plaintiffs intend to pursue these claims, they must strictly comply with all requirements of Fla. Stat. § 768.28(6)(a) and include detailed allegations of their compliance in a Fourth Amended Complaint.

The Fourth Amended Complaint shall also name the HCSB instead of the HCSD in all surviving counts against the HCSD. The Fourth Amended Complaint shall strictly adhere to all rulings in this Order, and shall only include the counts and requests for relief that were not dismissed. To the extent the Fourth Amended Complaint contains any additional allegations or claims that are not expressly permitted by this Order, those allegations or claims will be stricken upon timely motion by Defendants.

## III.    MOTION TO AMEND

Separately, Plaintiffs move for leave to amend their complaint in order to add certain allegations regarding video recordings taken by Explorer staff and stored on personal devices in violation of HCSD policy. Doc. 116. They explain that they learned of the existence of these recordings during the parties' mediation in October 2024. *Id.* Plaintiffs do not seek to assert new counts or causes of action, but to add the claim that Defendants recorded Doe without consent to some of the counts alleging disability discrimination, negligence, and IIED. *See* Doc. 116-4.

Defendants oppose the amendment, arguing, *inter alia*, that it is not supported by good cause, would be futile, and there was undue delay. Docs. 117, 118. In

particular, Defendants point out that Plaintiffs failed to move to move to amend the complaint for four months after learning of the recordings' existence. *Id.*

Federal Rule of Civil Procedure 15 requires a court to "freely give leave" to a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Supreme Court has explained, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). It is within the discretion of the Court to grant or deny an opportunity to amend. *See id.*

However, "[w]hen a plaintiff seeks leave to amend its complaint after the time required by the district court's scheduling order, the plaintiff 'must first demonstrate good cause under Rule 16(b) before [the court] will consider whether amendment is proper under Rule 15(a).'" *AMG Trade & Distribution, LLC v. Nissan N. Am., Inc.*, 813 F. App'x 403, 408 (11th Cir. 2020), quoting *Sosa v. Airprint Sys., Inc.*, 133 F. 3d 1417, 1419 (11th Cir. 1998). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Id.*, citing *Sosa*, 133 F.3d at 1418.

Here, the parties' deadline to move to amend the pleadings was April 19, 2024. Doc. 51. Accordingly, the good cause standard under Rule 16(b) applies to Plaintiffs' request. Although Plaintiffs did not learn of the new information until after the

deadline had passed, the Court is unconvinced that they acted with diligence in moving to amend. The delay of four months between the mediation and the motion, particularly coupled with Plaintiffs' indication in a prior filing that they intended to move to amend at least two months before they did so, *see* Doc. 113,[10] is not consistent with a finding of diligence.

Nonetheless, Defendants are not prejudiced by Plaintiffs' arguable lack of diligence. Defendants had possession of the undisclosed material, and Plaintiffs put them on notice of their intent to amend the complaint soon after Defendants disclosed it. Further, Plaintiffs do not seek to add additional causes of action based on the recordings. As a result, the new factual allegations will not lead to an additional round of motions to dismiss. Finally, the Court has already determined that a Fourth Amended Complaint will be permitted for certain limited purposes. For these reasons, the Court will permit the Fourth Amended Complaint to contain the new factual allegations that are included in Plaintiffs' proposed pleading at Doc. 116-4.

However, to the extent the Fourth Amended Complaint contains any allegations, statements, claims, or other changes that are not contained in the proposed Fourth Amended Complaint at Doc. 116-4, or that are not related to the pre-suit notice requirement with respect to Counts 13-20, or any claims that were dismissed in this Order, those allegations, statements, or claims will be stricken upon timely motion by Defendants.

---

[10] Indeed, Plaintiffs made a similar representation at a discovery hearing a month earlier.

Accordingly, it is **ORDERED**:

1.  Defendants School Board of Hernando County and Explorer K-8's Motion to Dismiss Third Amended Complaint (Doc. 84), and Defendants Sabreena Sarran and Andrew MacGregor's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 85) are GRANTED-IN-PART and DENIED-IN-PART.

    a.  The motions are granted to the extent that the following counts are dismissed, with prejudice: 1, 2, 3, 4, 8, 9, 11, 12, 14, 16, 17, 18, 19, 20, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 36, 37, 38, 40, 42. The requests for punitive damages in the following counts are dismissed with prejudice: 13, 15, 39, 41. To the extent the following counts seek equitable relief that is available under IDEA, those requests are dismissed with prejudice: 7, 10, 31, 35, 39, 41. Counts 13 and 15 are dismissed without prejudice. The motions are otherwise denied.

2.  Plaintiffs' Motion to Amend Amended Complaint (Doc. 116) is GRANTED.

3.  Plaintiffs may file a Fourth Amended Complaint that strictly complies with this Order, within FOURTEEN (14) DAYS of the date of this Order.

    a.  To the extent Plaintiffs intend to assert the claims in Counts 13 and 15, the Fourth Amended Complaint must contain specific allegations that establish Plaintiffs' strict compliance with the pre-suit notice requirement set forth in Fla. Stat. § 768.28. If additional time is needed to comply, Plaintiffs must file a detailed motion for extension of Case Management and Scheduling Order deadlines that indicates the status of their efforts.

    b.  The failure to timely file a Fourth Amended Complaint that complies with this Order will result in this action proceeding on only the claims that were not dismissed.

4.  Within seven (7) days after the filing of the Fourth Amended Complaint, Defendants may file a motion to strike any allegations or claims included within the Fourth Amended Complaint that do not comply with this Order.

    a.  Plaintiffs' response in opposition to that motion, if any, must be filed no more than seven (7) days after the motion.

5. Defendants are directed to file a responsive pleading to the Fourth Amended Complaint within twenty-one (21) days after it is filed.

**DONE** and **ORDERED** in Tampa, Florida on June 30, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties